## JACOB ZAMSTEIN *v.* JAMSHID MARVASTI
### (15556)

Borden, Berdon, Norcott, McDonald and Dupont, Js.

---

Argued January 14—officially released April 22, 1997

*Joseph B. Burns*, with whom were *Kerrie C. Dunne* and, on the brief, *Austin J. McGuigan*, for the appellant (plaintiff).

*Augustus R. Southworth III*, with whom were *Kristin C. Cunningham* and, on the brief, *Robert L. Cavanaugh, Jr.*, for the appellee (defendant).

*Opinion*

BORDEN, J. The principal issue in this appeal is whether the defendant, a psychiatrist hired to evaluate

two children to determine whether they had been sexually abused, owed a duty of care to the plaintiff, the father of the children and the suspected abuser, arising out of the defendant's conduct in performing the evaluation. The plaintiff, Jacob Zamstein, appeals[1] from the judgment of the Superior Court following the granting in part of the motion of the defendant, Jamshid Marvasti, to strike the plaintiff's complaint on the basis that the defendant owed no duty of care to the plaintiff. The plaintiff claims that the trial court improperly concluded that the defendant owed no duty of care to the plaintiff. We affirm the judgment of the trial court.

The plaintiff's complaint alleged the following relevant facts. In November, 1988, Sharon Zamstein brought an action in the Hartford Superior Court for dissolution of her marriage to the plaintiff. Sometime after initiating the dissolution proceeding, Sharon Zamstein accused the plaintiff of sexually abusing the couple's two children. In September, 1989, members of the Avon police department arrested the plaintiff on charges that he had sexually assaulted his two children, and the state's attorney for the Hartford judicial district commenced prosecution. Also in September, 1989, Sharon Zamstein retained the defendant, a psychiatrist licensed to practice in the state of Connecticut, to perform a sexual abuse evaluation of the children. The defendant met with the children on several occasions, videotaping each session. The plaintiff's complaint alleged further that in March, 1990, the defendant provided an edited version of the videotapes of his sessions with the children to the state's attorney's office and the plaintiff's criminal defense counsel. The plaintiff also alleged that the defendant had deleted exculpatory portions of the videotape before providing the tape to the state's attor-

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

ney's office. On January 3, 1991, the marriage between the plaintiff and Sharon Zamstein was dissolved. The court awarded joint custody of the minor children to the plaintiff and Sharon Zamstein. The criminal trial of the plaintiff commenced in July, 1991. Following a three month trial, in which the defendant testified for the state, the plaintiff was acquitted of the criminal charges. The plaintiff alleged that the state's attorney's prosecution of the plaintiff would not have continued but for the defendant's provision of the edited videotapes.

On the basis of these facts, the plaintiff asserted six theories of recovery against the defendant. In his first, six count amended complaint, the plaintiff claimed: (1) negligence with respect to the defendant's psychiatric evaluation of the children; (2) negligence with respect to the defendant's conduct of aiding the prosecution of the plaintiff; (3) negligent infliction of emotional distress resulting from the sum of the defendant's conduct; (4) intentional interference with custodial rights; (5) a civil conspiracy; and (6) intentional infliction of emotional distress. In paragraph twenty-eight of the complaint, the plaintiff alleged further that the defendant's negligence and carelessness had caused the plaintiff's relationship with his children to be irreparably damaged.

The defendant moved to strike the plaintiff's amended complaint in its entirety. On November 29, 1994, the trial court granted the defendant's motion to strike with respect to counts one through four, and paragraph twenty-eight of the plaintiff's amended complaint, but denied the defendant's motion with respect to counts five and six. In striking counts one through three, the plaintiff's negligence claims, the court ruled that, in the absence of an allegation of some special relationship between the plaintiff and the defendant, the defendant owed no duty of care to the plaintiff. The court struck count four, alleging intentional interfer-

ence with custodial rights, because the plaintiff had not alleged that his children had been abducted. The court struck paragraph twenty-eight of the plaintiff's complaint because the court construed it as a claim for loss of filial consortium, and held that such a claim is not recognized under Connecticut law.

On December 6, 1994, the plaintiff filed a notice of intent to appeal pursuant to then Practice Book § 4002.[2] Thereafter, the plaintiff submitted four additional revised complaints, alleging once again his claims of a civil conspiracy and an intentional infliction of emotional distress. On February 6, 1996, the plaintiff moved that the court render judgment for the defendant on counts one through six. In this motion, the plaintiff represented that he intended to appeal the trial court's ruling striking counts one through four and paragraph

[2] At the time the appeal was filed, Practice Book § 4002 provided in relevant part: "Appeal from Judgment Disposing of Part of Issues

"(a) A judgment pursuant to subsections (b) or (c) of this rule that disposes of certain of the issues between the parties or of part or all of the issues between some of them may be treated as a final judgment for the purpose of an appeal by the party or parties against whom the judgment is rendered, notwithstanding that the cause remains undisposed of on other issues or as to other parties. Alternatively, the party or parties may reserve their appeal until the final judgment is rendered which disposes of the cause for all purposes and as respects all parties; provided, in such a case, that notice of such reserving of appeal shall be filed in the trial court . . . .

"(b) When an entire complaint, counterclaim or cross complaint has been stricken, the trial court may, pursuant to Sec. 157, render judgment on such stricken complaint, counterclaim or cross complaint.

"When fewer than all of the counts of a complaint, counterclaim or cross complaint have been stricken, the trial court may, upon motion pursuant to this subsection, render judgment upon such stricken counts if (1) such counts are directed against a party against whom no relief is sought in the remaining counts of such pleading, or (2) the parties consent to entry of judgment and the trial court makes a written finding or written determination that the issues involved in the stricken counts are of such significance to the determination of the outcome of the case that the delay incident to the appeal would be justified. . . ."

Section 4002 has since been repealed and is now contained in Practice Book §§ 4002A, 4002B, 4002C and 4002D.

twenty-eight of his first amended complaint. He also represented that he would withdraw the two remaining counts within twenty days of the court's granting of the motion for judgment. On February 7, 1996, the trial court rendered judgment for the defendant on the first four counts of the plaintiff's complaint, and ordered that the plaintiff withdraw the remaining counts on or before February 27, 1996, or the case would be dismissed. Thereafter, on February 16, 1996, the plaintiff filed this appeal in the Appellate Court. On February 27, 1996, the plaintiff withdrew his fifth amended complaint, which had contained the remaining claims of a civil conspiracy and of an intentional infliction of emotional distress.

I

At oral argument in this court, the question arose whether the plaintiff had appealed from a final judgment because the plaintiff had not withdrawn the remaining two counts of his complaint until after filing the appeal. The question had been first raised sua sponte by the Appellate Court, which requested briefs and held a hearing on the question but made no decision, pending transfer of the appeal to this court. Because this matter implicates our jurisdiction over this appeal, we address it first.

"It is axiomatic that, except insofar as the constitution bestows upon this court jurisdiction to hear certain cases . . . the subject matter jurisdiction of the Appellate Court and this court is governed by statute." (Citation omitted.) *Waterbury Teachers Assn.* v. *Freedom of Information Commission*, 230 Conn. 441, 447, 645 A.2d 978 (1994). "It is equally axiomatic that, except insofar as the legislature has specifically provided for an interlocutory appeal or other form of interlocutory appellate review . . . appellate jurisdiction is limited to final judgments of the trial court." (Citations omit-

ted.) Id.; see also Practice Book § 4000; *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983). Practice Book § 4002C (a) provides that a judgment "that disposes of fewer than all of the causes of action in a complaint . . . [but] does not dispose of all the causes of action in that pleading brought by or against a particular party or parties . . . shall not constitute an appealable final judgment unless the trial court makes a written determination that the issues resolved by the judgment are of such significance to the determination of the outcome of the case that the delay incident to the appeal would be justified, and the chief justice or chief judge of the court having appellate jurisdiction concurs. . . ."[3]

The defendant argues that the plaintiff has not appealed from a final judgment because the trial court's judgment only disposed of four of the six counts brought against the defendant, and the trial court did not make the written determination required by Practice Book § 4002C. He argues, on the basis of *Stroiney* v. *Crescent Lake Tax District*, 197 Conn. 82, 86, 495 A.2d 1063 (1985), that the plaintiff's withdrawal of counts five and six *after* filing the appeal failed to cure the jurisdictional defect and, therefore, that the appeal must be dismissed. The plaintiff argues that the present case is factually distinguishable from *Stroiney*, and that the trial court's judgment did constitute a final judgment for purposes of appeal.

In *Stroiney* v. *Crescent Lake Tax District*, supra, 197 Conn. 86 n.3, we stated that "a jurisdictional defect renders the appeal void ab initio and is, therefore, not waivable." In *Stroiney*, the plaintiffs brought an action

---

[3] Practice Book § 4002, which was in effect at the time the appeal was filed, contained provisions similar to current Practice Book § 4002C. See footnote 2. The main difference between the two sections is that, pursuant to § 4002C, the chief justice of the court having appellate jurisdiction must concur with the trial court's determination that the delay incident to appeal is justified.

seeking declaratory and injunctive relief, as well as damages, for the allegedly illegal formation of a tax district. Id., 83. After the trial court rendered summary judgment for the plaintiffs, the defendants appealed. Id. We dismissed the appeal sua sponte for lack of a final judgment because the trial court had failed to dispose of the plaintiffs' claims for an injunction and for damages. Id., 84. In reaching our decision, we reasoned that "[t]he plaintiffs have not withdrawn *or abandoned* their claims for relief that have not yet been adjudicated." (Emphasis added.) Id. At oral argument in *Stroiney*, the plaintiffs attempted to avoid the final judgment requirement by offering to withdraw their claims for injunctive relief and damages. Id., 86 n.3. We declined the plaintiffs' offer, stating that to allow the plaintiffs, in effect, to amend their complaint by waiving any remaining claims for relief would in itself constitute an improper exercise of jurisdiction. Id.

We conclude, on the unique procedural posture of the present case, that the trial court's rendition of judgment as to four of the six counts lodged against the defendant in the plaintiff's complaint did constitute a final judgment for purposes of appeal. We agree with the plaintiff that the present case is distinguishable from *Stroiney*. First, in his motion for judgment, the plaintiff represented that he would withdraw his remaining two counts against the defendant within twenty days of the court's rendition of judgment. In addition, the trial court, in its judgment, ordered the plaintiff to withdraw the two remaining counts by February 27, 1996, or else the court would dismiss the case, and the plaintiff did so. In essence, the plaintiff abandoned his claims in his motion for judgment by promptly representing to the trial court that he would withdraw the two remaining counts, and by effectuating that representation, whereas the plaintiffs in *Stroiney* did not attempt to abandon their claims until oral argument on the appeal.

See *Stroiney* v. *Crescent Lake Tax District*, supra, 197 Conn. 84, 86 n.3. We note further that pursuant to Practice Book § 4183, this court has the authority to permit a party to file a late appeal, and that we would be inclined to permit the plaintiff to refile this appeal late because of its unique procedural circumstances. Under these particular circumstances, therefore, it would unduly elevate form over substance to hold that no appealable final judgment existed.

## II

We turn now to the principal issue in this appeal. The plaintiff claims that the trial court improperly struck counts one through four and paragraph twenty-eight of his amended complaint. He asks this court to extend existing law in Connecticut to recognize that psychiatrists, or other mental health professionals, who evaluate children for evidence of sexual abuse, owe a duty to exercise reasonable care in the performance of the evaluation, to the person suspected of committing the abuse. He contends that the need to protect individuals from false accusations of sexual abuse of children warrants the imposition of such a duty in the present case. In support of his claim, the plaintiff cites *Montoya* v. *Bebensee*, 761 P.2d 285, 288–89 (Colo. App. 1988), in which the Colorado Court of Appeals concluded, on similar facts, that a mental health care provider owed, to any person who was the subject of any public report or other adverse recommendation by that provider, a duty to use due care in formulating opinions upon which such reports or recommendations were based.[4] He

---

[4] In *Montoya* v. *Bebensee*, supra, 761 P.2d 288–89, the court reasoned that the duty of care it imposed upon mental health providers was a duty that such individuals were already required to meet. Implicit in the *Montoya* decision is the notion that the harm that may result from negligent, false accusations of child abuse exceeds the burden imposed upon mental health providers in exercising due care in evaluating and forming opinions regarding child abuse. Id.

argues that, because mental health professionals in Connecticut are already held to a standard of due care when they evaluate children for evidence of sexual abuse, extending the duty to encompass the parent or parents of the child who are alleged to have committed the abuse would not impose a greater burden on such mental health professionals, but rather would encourage them to perform their evaluations in accordance with the recognized standard of care. We disagree.

"The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." (Internal quotation marks omitted.) *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 384, 650 A.2d 153 (1994). We have stated that the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would "anticipate that harm of the general nature of that suffered was likely to result," and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case.[5] Id., 386–87.

---

[5] We recently analyzed the issue of duty in *Clohessy* v. *Bachelor*, 237 Conn. 31, 45–46, 675 A.2d 852 (1996). "Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . *The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised.* . . . *By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result? . . . Thus, initially, if it is not foreseeable to a reasonable person in the defendant's position that harm of the type alleged would result from the defendant's actions to a particular plaintiff, the question*

We conclude that imposing upon mental health professionals, who have been engaged to evaluate whether there has been sexual abuse, a duty of care running to the benefit of the alleged sexual abuser would be contrary to the public policy of this state. The legislature has expressed the strong public policy of encouraging medical professionals and other persons to report actual and suspected child abuse to the appropriate authorities and agencies. General Statutes (Rev. to 1995) § 17a-101[6] requires medical professionals and

*of the existence of a duty to use due care is foreclosed, and no cause of action can be maintained by the plaintiff.*

*"A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists.* Many harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. . . . *The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results."* (Citations omitted; emphasis added; internal quotation marks omitted.) Id.

[6] General Statutes (Rev. to 1995) § 17a-101 provides in relevant part: "Protection of children from abuse. Reports required of certain professional persons. When child may be removed from surrounding without court order. Reporting policy. (a) The public policy of this state is: To protect children whose health and welfare may be adversely affected through injury and neglect; to strengthen the family and to make the home safe for children by enhancing the parental capacity for good child care; to provide a temporary or permanent nurturing and safe environment for children when necessary; and for these purposes to require the reporting of suspected child abuse, investigation of such reports by a social agency, and provision of services, where needed, to such child and family.

"(b) *Any physician or* surgeon licensed under the provisions of chapter 370 or 371, any resident physician or intern in any hospital in this state, whether or not so licensed, and any registered nurse, licensed practical nurse, medical examiner, dentist, dental hygienist, psychologist, school teacher, school principal, school guidance counselor, school paraprofessional, social worker, police officer, clergyman, pharmacist, physical thera-

other persons to notify the state commissioner of children and families, or local or state police, whenever they have "reasonable cause to suspect or believe" that a child under the age of eighteen has been abused. Subsection (b) of § 17a-101 provides that such persons shall be fined up to $500 if they fail to make such a report. Subsection (h) of § 17a-101 provides that persons who make such reports in good faith "shall be immune from any liability, civil or criminal," that may result from making the report.

We conclude that imposing a duty on mental health professionals pursuant to the plaintiff's theory of liability in the present case would carry with it the impermis-

pist, osteopath, optometrist, chiropractor, podiatrist, *mental health professional* or physician assistant, any person who is a Connecticut certified substance abuse counselor, any person who is a Connecticut certified marital and family therapist, any person who is a sexual assault counselor or a battered women's counselor as defined in section 52-146k or any person paid for caring for children in a day care center *who has reasonable cause to suspect or believe that any child under the age of eighteen has had physical injury or injuries inflicted upon him* by a person responsible for such child's or youth's health, welfare or care, by a person given access to such child by such responsible person, or by a school employee other than by accidental means or has injuries which are at variance with the history given of them, *or is in a condition which is the result of maltreatment such as, but not limited to, malnutrition, sexual abuse, sexual exploitation, deprivation of necessities, emotional maltreatment, or cruel punishment,* or has been neglected as defined by section 46b-120 *shall report or cause a report to be made in accordance with the provisions of subsection (c) of this section . . . . Any person required to report under the provisions of this section who fails to make such report shall be fined not more than five hundred dollars.*

"(c) An oral report shall be made immediately by telephone or otherwise, to the state commissioner of children and families or his representative, or the local police department or the state police to be followed within seventy-two hours by a written report to the commissioner of children and families or his representative . . . .

"(h) Any person, institution or agency which, in good faith, makes the report required by this section shall be immune from any liability, civil or criminal, which might otherwise be incurred or imposed and shall have the same immunity with respect to any judicial proceeding which results from such report. . . ." (Emphasis added.)

sible risk of discouraging such professionals in the future from performing sexual abuse evaluations of children altogether, out of a fear of liability to the very persons whose conduct they may implicate. Such a result would necessarily run contrary to the state's policy of encouraging the reporting and investigation of suspected child abuse, as expressed in § 17a-101, because effective evaluation and diagnosis of children is a necessary component of discovering the abuse in the first instance. In addition, imposing such a duty creates too high a risk that, in close cases, mental health professionals would conclude that no sexual abuse had occurred because they feared potential liability to the suspected abusers, rather than because of their professional judgment that, in all likelihood, no abuse had occurred. Because "[r]ules of law have an impact on the manner in which society conducts its affairs"; *Maloney* v. *Conroy*, 208 Conn. 392, 403–404, 545 A.2d 1059 (1988); we conclude that the sounder judicial ruling is to hold that no such duty exists.

The Texas Supreme Court confronted an issue similar to the issue before us and concluded that mental health professionals owe no duty of care to suspected child abusers regarding the professionals' diagnosis of the childrens' conditions. See *Bird* v. *W.C.W.*, 868 S.W.2d 767, 768 (Tex. 1994). In *Bird,* the court noted that the evaluation of children to determine whether they have been sexually abused was essential to the goal of eradicating sexual abuse of children, and that the need for experienced mental health professionals to evaluate children was heightened because of the difficulty young children encounter in communicating that they have been sexually abused. Id., 769. The court reasoned that "[b]ecause they are dealing with such a sensitive situation, mental health professionals should be allowed to exercise their professional judgment in diagnosing sexual abuse of a child without the judicial imposition of

a countervailing duty to third parties. . . . [T]here is great social utility in encouraging mental health professionals to assist in the examination and diagnosis of sexual abuse." Id., 769–70. We agree with the Texas Supreme Court's analysis of the important role that professional evaluation plays in discovering and eradicating the sexual abuse of children.

We find further support for our conclusion in analogous situations in which we have determined that other professionals owe no duty of care to certain parties unrelated to the professionals. See *Fraser* v. *United States*, 236 Conn. 625, 627, 674 A.2d 811 (1996); *Maloney* v. *Conroy*, supra, 208 Conn. 403; *Krawczyk* v. *Stingle*, 208 Conn. 239, 246–47, 543 A.2d 733 (1988).

In *Fraser* v. *United States*, supra, 236 Conn. 625, we considered whether a psychotherapist had a duty to control a psychiatric outpatient to prevent the patient from committing an act of violence against a third person. We reasoned that "[c]onsiderations of public policy, which undergird the judicial determination of the scope of duty in the law of negligence . . . suggest that psychotherapists should not be held liable to third parties who are not foreseeable victims." Id., 634. We held that balancing the interests of those injured by psychiatric outpatients against the interests of the mental health profession in honoring the confidentiality of the therapeutic relationship, and in respecting the humanitarian and due process concerns that limit involuntary hospitalization, "counsels against the imposition of liability for harm to unidentifiable victims or unidentifiable classes of victims of outpatients with no history of dangerous conduct or articulated threats of dangerous behavior." Id., 635.

In *Maloney* v. *Conroy*, supra, 208 Conn. 393–94, a daughter brought an action against two physicians who had treated her mother, alleging that she had suffered

severe emotional distress as a result of observing her mother's health deteriorate under the substandard treatment of the physicians. We disallowed the daughter's claim, reasoning that "[m]edical judgments as to the appropriate treatment of a patient ought not to be influenced by the concern that a visitor may become upset from observing such treatment or from the failure to follow some notion of the visitor as to care of the patient. The focus of the concern of medical care practitioners should be upon the patient and any diversion of attention or resources to accommodate the sensitivities of others is bound to detract from that devoted to patients." Id., 403.

In *Krawczyk* v. *Stingle*, supra, 208 Conn. 240, the intended beneficiaries of a decedent brought an action against the decedent's attorney, alleging that they had been harmed financially as the result of the attorney's failure to arrange for a timely execution of certain estate planning documents. The decedent had died before executing the documents. Id., 243. In disallowing the intended beneficiaries' claim, we concluded that allowing such a claim would interfere with an attorney's primary responsibilities to his client. Id., 246. We stated that "[i]mposition of liability would create an incentive for an attorney to exert pressure on a client to complete and execute estate planning documents summarily. Fear of liability to potential third party beneficiaries would contravene the attorney's primary responsibility to ensure that the proposed estate plan effectuates the client's wishes and that the client understands the available options and the legal and practical implications of whatever course of action is ultimately chosen." Id., 246–47.

The policy concerns raised in *Fraser*, *Maloney* and *Krawczyk*, are particularly relevant to the present case. In our view, mental health professionals retained to evaluate children for evidence of child abuse should be

allowed to focus their complete attention on the child whom they are to evaluate. The primary responsibility of such professionals is to determine whether the child has been sexually abused. They should not be distracted from their duty by the specter of potential liability to the suspected abuser in the event that their assessment of the child eventually turns out to be incorrect but honest. See C. Bowman & E. Mertz, "A Dangerous Direction: Legal Intervention in Sexual Abuse Survivor Therapy," 109 Harv. L. Rev. 549, 595–96 (1996) (opposing third party recovery against therapists who evaluate adults who were allegedly sexually abused as children partly because of detrimental effect on therapist-patient relationship caused by extending such liability).

We acknowledge that persons falsely charged with sexual abuse of children on the basis of incorrect evaluations may suffer great harm in both their social and personal relationships, and that such accusations have the potential of causing serious damage to a person's reputation. We are persuaded, however, that recognizing a cause of action under the circumstances pleaded in the plaintiff's complaint would have consequences detrimental to the community as a whole that outweigh any benefit that persons falsely charged with sexual abuse might derive if we were to permit such an action to proceed.[7] Accordingly, we conclude that the trial court properly struck counts one through three of the plaintiff's amended complaint.

## III

The plaintiff next claims that the trial court improperly struck count four of his amended complaint. He contends that this count of the complaint sufficiently alleged a cause of action for intentional interference

---

[7] Because our conclusion is based on public policy, we find it unnecessary to address the foreseeability prong of our analytical framework for duty. See *Clohessy* v. *Bachelor*, 237 Conn. 31, 45–46, 675 A.2d 852 (1996).

with custodial rights, or in the alternative, for alienation of affections.[8] We disagree. Although we have recognized that the tort of child abduction or custodial interference may have a place in our jurisprudence; see *Marshak* v. *Marshak*, 226 Conn. 652, 665, 628 A.2d 964 (1993); we conclude that the plaintiff has failed to allege sufficient facts to state such a cause of action.

In *Marshak*, the plaintiff brought an action against several defendants for conspiracy to interfere with her custodial relationship with her children arising from their actions in helping her husband to remove the children from her custody. Id., 654–58. On the basis of authority from other jurisdictions and § 700 of the Restatement (Second) of Torts,[9] the trial court found the defendants liable to the plaintiff for having conspired with her husband, and having aided and abetted him, to commit the tort of child abduction. Id., 660. On appeal, we reversed the trial court's judgment, concluding that the defendant[10] was not liable because at the time when he committed the actions that allegedly helped her husband to remove the children from the plaintiff's custody, the husband had joint legal custody of the children. Id., 666. We stated that "a factual predi-

---

[8] In addition, the plaintiff claims that the trial court impermissibly relied on facts outside the complaint. See *Liljedahl Bros., Inc.* v. *Grigsby*, 215 Conn. 345, 348, 576 A.2d 149 (1990); *Cavallo* v. *Derby Savings Bank*, 188 Conn. 281, 285–86, 449 A.2d 986 (1982); *Ivler* v. *Stanton*, 161 Conn. 568, 570, 287 A.2d 742 (1971). Although the trial court, in its memorandum of decision, noted certain facts concerning the chronology of events that were not contained in the complaint, those facts were superfluous to the court's decision. In sum, the plaintiff has failed to persuade us that the trial court's error was harmful. See *Borkowski* v. *Borkowski*, 228 Conn. 729, 747, 638 A.2d 1060 (1994).

[9] The Restatement (Second) of Torts (1977) § 700 provides: "One who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him, is subject to liability to the parent."

[10] Only one of the defendants had appealed from the trial court's judgment. *Marshak* v. *Marshak*, supra, 226 Conn. 654.

cate for any tort related to child abduction . . . is the unlawful custody of a child." Id.

The plaintiff in the present case has failed to allege sufficient facts to state a cause of action for the tort of child abduction or custodial interference, as defined in *Marshak* v. *Marshak*, supra, 226 Conn. 666, because the plaintiff did not allege any facts suggesting an unlawful custody of his children. In the absence of such an allegation, the trial court was correct in striking count four of the plaintiff's complaint. The defendant's acts were the alleged influencing of a judicial decision regarding custody, and were not some extralegal taking of custody as required for the tort of intentional interference of custodial rights. In addition, we conclude that the plaintiff's alternative claim—that count four constituted a claim for alienation of the affections of his children—must fail because the legislature has specifically abolished actions based on alienation of affections. See General Statutes § 52-572b.[11] Even if the statute refers to the abolition of actions involving the alienation of affections of a child as well as a spouse, we know of no common law or statutory cause of action that recognizes the cause of action for which the plaintiff seeks relief. We find persuasive § 699 of the Restatement (Second) of Torts, which provides that "[o]ne who, without more, alienates from its parent the affections of a child, whether a minor or of full age, is not liable to the child's parent." Accordingly, we conclude that the trial court properly struck count four of the plaintiff's complaint.

## IV

The plaintiff's final claim is that the trial court improperly construed paragraph twenty-eight of the amended

---

[11] General Statutes § 52-572b provides: "Alienation of affections and breach of promise actions abolished. No action may be brought upon any cause arising from alienation of affections or from breach of a promise to marry."

complaint, which alleged that the defendant's actions caused irreparable damage to the plaintiff's relationship with his children, as a claim for loss of filial consortium. Instead, the plaintiff claims that paragraph twenty-eight alleged a direct injury resulting from the defendant's negligence. Regardless of whether paragraph twenty-eight alleged a claim for loss of filial consortium, or a claim for damages to the plaintiff directly caused by the defendant, the trial court was correct in striking it. Under either reading, paragraph twenty-eight would have viability only as a derivation of, or as an adjunct to, a valid underlying substantive cause of action. Thus, paragraph twenty-eight cannot survive our conclusion that the plaintiff has failed to state such a cause of action.

The judgment is affirmed.

In this opinion NORCOTT, MCDONALD and DUPONT, Js., concurred.

BERDON, J., dissenting. The majority holds that, based upon what it presumes to be the public policy of this state, a psychiatrist or other mental health professional is absolutely immune from liability in an action brought by a parent as a result of the mental health professional's negligence in accusing the parent of sexually abusing his or her children. I disagree that the public policy of this state sanctions such immunity from civil liability.

The plaintiff, Jacob Zamstein, in his complaint seeking damages from the defendant, Jamshid Marvasti, a psychiatrist, alleges[1] a tale of horror caused by the defendant's negligent conduct. On November 14, 1988, the plaintiff's wife, Sharon Zamstein, brought an action

---

[1] "In an appeal challenging a ruling on a motion to strike, we must take the facts to be those alleged in the plaintiff's complaint, and must construe the complaint in the manner most favorable to the plaintiff." *Mozzochi* v. *Beck*, 204 Conn. 490, 491, 529 A.2d 171 (1987).

for dissolution of marriage against the plaintiff. The plaintiff and Sharon Zamstein entered into a stipulation to have James C. Black, a psychiatrist, appointed to evaluate parental roles and to prepare a custody evaluation.

Thereafter, while the custody of the Zamsteins' minor children, J and R, was at issue, Sharon Zamstein accused the plaintiff of having sexually abused the two children. On September 14, 1989, an arrest warrant was executed and the plaintiff was taken into custody on charges of sexual assault. Later that month, Sharon Zamstein was referred to the defendant by her attorney in the dissolution proceeding in order to evaluate R and J for evidence of sexual abuse. At the request of Sharon Zamstein, the defendant undertook the evaluation. At the time that the defendant agreed to perform the evaluation, he knew that the children were the subject of a custody dispute between the plaintiff and Sharon Zamstein, and that, on the complaint of Sharon Zamstein, the plaintiff had been arrested on charges involving the alleged sexual abuse of his children. The defendant evaluated R during five sessions and J during three sessions, and the defendant videotaped all of these sessions. During these sessions, the defendant used several improper techniques to elicit incriminating responses from R and J, including the use of coercive interview techniques, asking leading or suggestive questions, and offering candy as a reward. At no time during his evaluation did the defendant ever meet or speak with the plaintiff.

On December 20, 1990, Black, having found no evidence of sexual abuse, recommended that the criminal charges against the plaintiff be dismissed and that unsupervised visitation between the plaintiff and the minor children commence immediately. Thereafter, on January 3, 1991, the family court issued a judgment dissolving the marriage between the plaintiff and Sharon

Zamstein. The family court awarded joint custody of the minor children to the plaintiff and Sharon Zamstein.

Subsequently, the defendant presented to the state's attorney's office in Hartford and to the plaintiff's criminal defense counsel an edited version of the videotapes of the sessions with R and J, which he believed demonstrated that sexual abuse had occurred. In the edited version of the videotapes, the defendant had deleted the children's statements and actions exculpating the plaintiff from the allegations of sexual abuse.

Despite the findings of Black and the judgment of the family court, the state's attorney's office persisted with the prosecution of the plaintiff based on the defendant's presentation of the edited videotape. The criminal trial lasted more than three months and was the focus of numerous newspaper articles and televised news stories. At trial, the only expert testimony presented by the state was that of the defendant. Only after cross-examination of the defendant by the plaintiff's defense counsel at the criminal trial was it discovered that the defendant had edited the videotape to delete all of the exculpatory statements and actions by R and J. The plaintiff was subsequently acquitted of all criminal charges.

I agree with the majority that in determining whether a defendant owes a duty to another requires a two part inquiry: (1) whether it is foreseeable that harm of the general nature suffered by the plaintiff may result if care is not exercised; and (2) whether the imposition of such a duty is consistent with the public policy of this state. *Clohessy* v. *Bachelor*, 237 Conn. 31, 45–46, 675 A.2d 852 (1996). It is clear that the harm caused to the plaintiff in this case was foreseeable. The defendant was aware of the pending divorce proceeding and the criminal action during his evaluation of the minor children. Indeed, the defendant provided the edited video-

tape to the state's attorney's office for the purpose of assisting in the prosecution of the plaintiff for sexual abuse. Accordingly, the defendant knew or should have known that his actions would have a direct impact on the plaintiff's criminal prosecution and on the child custody proceedings, and could cause irreparable harm to the plaintiff and to his relationship with his children.

Nevertheless, the majority concludes that the defendant owed no duty to the plaintiff because the imposition of such a duty would be contrary to the public policy of this state. Although this court may assume what the public policy of this state is when the legislature is silent; see *State* v. *Blasko*, 202 Conn. 541, 559, 522 A.2d 753 (1987); once the legislature has spoken on a subject, it establishes the public policy of the state. *Laurel Bank & Trust Co.* v. *Mark Ford, Inc.*, 182 Conn. 437, 442, 438 A.2d 705 (1980).

In my view, the legislature has recognized that it is not contrary to the public policy of this state to impose on psychiatrists and other mental health professionals a duty to persons they negligently accuse of abusing children. I agree with the majority that General Statutes (Rev. to 1995) § 17a-101 demonstrates the state's strong public policy to report actual and suspected abuse. The majority, however, ignores the import of § 17a-101 (h), which provides in part that psychiatrists and others who "*in good faith*, [make] the report required by this section shall be immune from any liability, civil or criminal, which might otherwise be incurred or imposed . . . ." (Emphasis added.) In other words, even in those situations in which mental health professionals are required to report child abuse, the granting of such immunity is predicated on the exercise of "good faith." Therefore, because the legislature in adopting § 17a-101 (h) refused to grant absolute immunity from civil liability to mental health professionals for reporting child abuse when required by law, it cannot possibly

be the public policy of this state that mental health professionals owe no duty under any circumstances to persons they negligently accuse of child abuse.[2]

Under the allegations of the plaintiff's complaint, it is inconceivable that such immunity would be available to the defendant. For example, the plaintiff alleges that the defendant had: (1) coercively obtained statements from the children that they were sexually abused by the plaintiff; (2) videotaped the interviews; and (3) furnished to the state's attorney's office a videotape *edited to delete exculpatory portions.* If, as a result of the edited videotape, the state continued with its prosecution of the plaintiff for sexual abuse, requiring him to endure a three month criminal trial during which it was discovered for the first time that the videotape was edited and at which he was found not guilty, the defendant would be hard pressed to convince a trier of fact that he acted in good faith.

Other jurisdictions have held that mental health professionals owe a duty to individuals whom they negligently accuse of child abuse. See, e.g., *Tuman* v. *Genesis Associates,* 894 F. Sup. 183, 188 (E.D. Pa. 1995) ("a therapist owes a duty of reasonable care to a patient's parents, where [1] the therapist specifically undertook to treat the child for the parents; [2] the parents relied upon the therapist; [3] the therapist was aware of the parents' reliance; and [4] it was reasonably foreseeable that the parents would be harmed by the therapist's conduct"); *Montoya* v. *Bebensee,* 761 P.2d

---

[2] Furthermore, the majority of courts in other jurisdictions have concluded that, under the express language of child abuse reporting statutes similar to § 17a-101 (h), the immunity granted to mandatory reporters is limited to reports that were submitted in good faith. See, e.g., *Michaels* v. *Gordon,* 211 Ga. App. 470, 471, 439 S.E.2d 722 (1993); *Viviano* v. *Moore,* 899 S.W.2d 326, 328 (Tex. App. 1995); *Dunning* v. *Paccerelli,* 63 Wash. App. 232, 239–40, 818 P.2d 34 (1991); *Elmore* v. *Van Horn,* 844 P.2d 1078, 1084 (Wyo. 1992); see also annot., 73 A.L.R.4th 782, 826 (1989).

285, 289 (Colo. App. 1988) ("a mental health care provider owes a duty of care to any person, who is the subject of any public report or other adverse recommendation by that provider, to use due care in formulating any opinion upon which such a report or recommendation is based"); *Caryl S.* v. *Child & Adolescent Treatment Services, Inc.*, 161 Misc. 2d 563, 572, 614 N.Y.S.2d 661 (1994) ("where the determination of sexual abuse is made by a professional treating a child, with subsequent actions taken based upon that determination and aimed, whether in whole or in part, at shaping not only the conduct and well-being of the child but also the conduct of the suspected abuser, or the relationship between them, a duty of care is owed not only to the child but also to the alleged abuser").

The majority opinion has serious repercussions.[3] It will allow mental health professionals to act negligently in their evaluation without any civil restraint, even when one parent's motivation for accusing the other parent of sexual abuse of his or her child is a dissolution proceeding involving a hotly contested custody issue. I, of course, agree with the majority that mental health professionals should not be discouraged from reporting child abuse. The concern that subjecting those professionals to civil liability for their negligent conduct could affect their professional judgment is allayed for several

---

[3] It is well documented that, in instances of sexual abuse claims in highly charged custody disputes, the determination that sexual abuse has occurred will have dire consequences. " 'More and more allegations of incest and [child] sexual abuse by husbands are being made by their wives during custody disputes. If the allegations are proven, the perpetrator, usually the husband/father, is excluded from contact with his children. . . . Child psychiatrists are frequently used by both sides to evaluate the child and make a determination about the authenticity of the charges. . . . *A mistake might jeopardize a child's future or destroy a man's family life and career.*' " (Emphasis in original.) *Caryl S.* v. *Child & Adolescent Treatment Services, Inc.*, supra, 161 Misc. 2d 570–71, quoting A. Green, "True and False Allegations of Sexual Abuse in Child Custody Disputes," 25 J. Am. Acad. of Child Psychiatry 449 (1986).

reasons. First, any parent who seeks to impose civil liability must prove that the mental health professional was negligent—that is, he or she failed to meet the appropriate standard of care. Indeed, if we were to apply the majority's reasoning, it would be contrary to the state's public policy to recognize that a physician has a duty to a patient not to commit malpractice because of concern that the physician would be reluctant to treat his patient aggressively when that treatment is in the patient's best interest.[4] More importantly,

[1] Furthermore, the majority incorrectly relies on three cases that are simply not determinative with respect to whether, in this case, public policy justifies the imposition of a duty on mental health professionals owed to alleged sexual abusers.

In *Fraser* v. *United States*, 236 Conn. 625, 630, 674 A.2d 811 (1996), this court considered whether a psychotherapist had a duty to control a patient from harming "a victim who was neither readily identifiable nor within a foreseeable class of victims." We concluded that no duty was owed because the victim was not identifiable. Id., 634. The court further stated that balancing the relevant interests "counsels against the imposition of liability for harm to unidentifiable victims or unidentifiable classes of victims of outpatients with no history of dangerous conduct or articulated threats of dangerous behavior." Id., 635. In the present case, however, this public policy determination is irrelevant because it is undisputed that the plaintiff was an identifiable victim of the defendant's negligent act.

Similarly, in *Maloney* v. *Conroy*, 208 Conn. 392, 393–94, 545 A.2d 1059 (1988), this court considered whether two physicians owed a duty to a patient's daughter who allegedly suffered severe emotional distress as a result of witnessing the patient's condition worsen because of the physicians' negligent treatment. This court concluded, as a matter of law, that there was no duty owed to the patient's daughter because her harm was not foreseeable. Id., 402. Indeed, this court stated that imposing a duty in such circumstances would result in an "undesirable sequel." Id., 403. Specifically, the court stated: "Medical judgments as to the appropriate treatment of a patient ought not to be influenced by the concern that a visitor may become upset from observing such treatment or from the failure to follow some notion of the visitor as to care of the patient. The focus of the concern of medical care practitioners should be upon the patient and any diversion of attention or resources to accommodate the sensitivities of others is bound to detract from that devoted to patients." Id. Similar to *Fraser*, the court in *Maloney* hinged its public policy conclusion on the fact that the harm to the plaintiff was simply not foreseeable.

The majority also relies on *Krawczyk* v. *Stingle*, 208 Conn. 239, 241, 543 A.2d 733 (1988), in which a decedent's beneficiaries brought an action against

when mental health professionals report child abuse cases to the state as required by § 17a-101, they are granted absolute immunity in civil, as well as criminal, cases if they acted in good faith. Finally, requiring psychiatrists and other health care professionals to answer for their negligence would have a salutary effect of

the decedent's attorney for failing to provide estate planning documents to the decedent for execution prior to his death. Although the court stated that the plaintiffs were the intended beneficiaries, and thus were foreseeable plaintiffs, the court held that "the imposition of liability to third parties for negligent delay in the execution of estate planning documents would not comport with a lawyer's duty to undivided loyalty to the client." Id., 246. In other words, the court concluded that the duty owed to a third party could not trump an attorney's ethical obligations owed to his or her client. Id. Unlike *Krawczyk*, the duty owed to the plaintiff in this case is, in fact, compatible with the duty owed to the children. Indeed, a mental health professional's duty to report in a nonnegligent manner that a parent sexually abused his or her children is in the best interests of the children.

In my view, these three cases on which the majority relies do not support the majority's view that public policy demands that the defendant in this case owes no duty to the plaintiff.

Finally, the majority looks for support to the law journal article authored by Cynthia Bowman and Elizabeth Mertz, entitled "A Dangerous Direction: Legal Intervention in Sexual Abuse Survivor Therapy," 109 Harv. L. Rev. 549 (1996). That article, like the case law relied upon by the majority, is not relevant. The article addresses only those situations in which a parent seeks recovery against a mental health professional for negligence in the treatment of an adult child that results in the adult child believing that he or she was sexually abused by the parent during early childhood. This is emphasized in the authors' conclusion: "[W]e conclude that the legal system should not permit third-party liability against the wishes of the therapist's client. Parents who believe that their adult children have accused them falsely should address their problems directly with the adult women and men involved, with or without recourse to the law. The client should decide whether psychotherapeutic malpractice has occurred. The courts should not allow malpractice claims when fully competent adult patients or clients do not believe that they have suffered malpractice—such claims would misuse the courts' time and power. If malpractice has indeed occurred, the patient or client can sue to redress the wrong. If a parent feels defamed, he or she can take action against the source—the child—rather than treating the now-adult child as the malleable dupe of a brainwashing therapist." Id., 638. In the present case, the plaintiff alleges not the negligent treatment of an adult child, but, rather, professional misconduct that resulted in his *minor* children wrongfully accusing him of sexual abuse and, thereby, among other things, destroying the relationship between them.

causing the profession to regulate itself by establishing appropriate standards of care.[5] The substantial harm that could result to a person when a professional like the defendant is not subject to civil sanctions is demonstrated in this case. That harm affects not only the parent, but also the children who the majority purports to protect, because such negligent conduct could destroy the relationship between a parent and his or her children.[6]

In circumstances involving allegations of child sexual abuse, the mental health professional's determination that abuse has occurred involves not only the child, but also the alleged abuser. "When, based upon that determination, a course of action is thereafter embarked upon by the professional, it is intended to, and necessarily does, affect both the child and his or her abuser, especially where a family relationship is involved. A suspected abuser surely has the right to a reasonable expectation that such a determination, touching him or her as profoundly as it will, will be carefully made and will not be reached in a negligent manner." *Caryl S.* v. *Child & Adolescent Treatment*

---

[5] As two commentators have observed, "[i]t is evident, from the kinds of testimony given by experts in the mental health and medical fields . . . that few safeguards exist for people, whether parents or surrogate care providers, who are wrongly but vigorously accused of having molested a child under their care or supervision." T. Horner & M. Guyer, "Prediction, Prevention, and Clinical Expertise in Child Custody Cases in which Allegations of Child Sexual Abuse Have Been Made," 25 Fam. L.Q. 381, 382 (1991).

Imposing liability on mental health professionals when they act negligently will result in the profession policing itself and establishing professional standards. These standards will not only provide guidance for the conduct of professionals, but will also have the salutary effect of safeguarding healthy relationships between parents and children, which could be destroyed when a parent is negligently accused of abuse.

[6] The plaintiff alleged in part the following injuries: "As a further direct and proximate result of the aforementioned negligence and carelessness of the defendant, the plaintiff has had the companionship, support, love, affection and paternal relationship between himself and his children irreparably damaged."

*Services, Inc.*, supra, 161 Misc. 2d 571. Accordingly, I would hold that a mental health professional, in rendering an opinion with respect to allegations of child sexual abuse, owes a duty of care not only to the child, but also to the alleged abuser.

Accordingly, I dissent.