[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Lisa A. Anderson, appeals from the final decision of the defendant, Department of Public Health ("DPH"), dated January 8, 1999, revoking her family daycare license. This administrative appeal to the Superior Court, brought pursuant to the provisions of General Statutes § 4-183, followed. The plaintiff has exhausted all administrative remedies available within the agency and is aggrieved by DPH's final decision in this matter. Here, the plaintiff seeks an order mandating that DPH reinstate the plaintiff's family daycare home license forthwith.
This matter originated when DPH notified the plaintiff by letter dated February 10, 1998, that it intended to revoke her family daycare home license #36017, pursuant to General Statutes § 19a-87e and § 19a-87b-15(a) of the Regulations of Connecticut State Agencies ("Regulations"). DPH informed the plaintiff that the bases for the proposed revocation was that the plaintiff: (1) had failed to operate her family daycare in CT Page 16238 accordance with state laws, specifically those controlling the mandated reporting to the Department of Children and Families ("DCF") of suspected child abuse and neglect; and (2) failed to utilize an approved staff person as a substitute in her daycare facility.
An administrative hearing was conducted on April 17, 1998 and May 12, 1998 before DPH hearing officer Catherine A. Hess. At the hearing, the plaintiff contested the DPH charge that she failed to report suspected abuse, but did not challenge the DPH claim that she failed to utilize an approved staff person as a substitute.
This case involved an investigation of child abuse and neglect of two daycare children. Portions of the proceedings before the hearing officer were held in executive session and transcript pages and exhibits which identified the children involved were ordered sealed. Those records will remain sealed until further court order.
The hearing officer found that two minor children, "N" and "M", who were siblings, had been enrolled in the plaintiff's home daycare facility. "N" was enrolled in December, 1993, when 19 months old. "M" was enrolled in January, 1995, while still an infant. "M" had special needs (hearing loss). The two children remained in the care of the plaintiff until February, 1996.
On April 10, 1997, a DCF investigator contacted DPH because of concerns that while "N" and "M" were in the plaintiff's care, she had failed to report that the children were being abused by a parent. A DPH investigation followed.
The DPH investigation revealed that while the two minor children were entrusted to the plaintiff, she recorded or documented numerous instances in which the children's health care and needs were not being met by the parents. The plaintiff had documented chronic illnesses and ear infections which the children's parents failed to address. In addition, the plaintiff had recorded or documented numerous instances of burn marks and bruises on the bodies of both children, including apparent cigarette and kerosene heater burn marks. In one incident on February 2, 1996, the plaintiff witnessed "M" engaging in learned helplessness behavior, when he made no attempt to resist when accidentally falling down the stairs in the plaintiff's daycare center. The plaintiff was particularly concerned about that CT Page 16239 conduct.
There was evidence before the hearing officer that the plaintiff had shared her concerns regarding the abuse and neglect of "N" and "M" with two other childcare professionals, both during and after the time the children were in her care. Shortly after the "learned helplessness behavior" incident, the plaintiff gave the family notice that other childcare arrangements would have to be sought for "N" and "M". The plaintiff told the children's father that she needed space for a family member.
Before the hearing officer, the plaintiff testified that she focused upon information that would reflect badly on the parents of "N" and "M" in her sworn statement prepared for DCF on April 1, 1997 in order to bolster DCF's efforts to invoke a 96 hour hold and remove the children from their parent's care. The plaintiff testified that she did not understand the mandated reporting requirements with which she was required to comply as a family daycare home provider. The plaintiff repeatedly denied having concerns sufficient to call DCF herself regarding any suspected abuse or neglect during the time "N" and "M" were in her care. The hearing officer did not find the plaintiff's testimony credible as to all of the foregoing.
Subsequently, DPH adopted the hearing officer's proposed memorandum of decision as the DPH's final decision in this matter. This administrative appeal to the Superior Court followed.
The plaintiff raises two main issues. First, the plaintiff contends that the legal standard employed by the hearing officer was an unwarranted exercise of discretion. (Respondent/Appellant's Brief, p. 4.) General Statutes §4-183(j) provides:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: . . . (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . .
CT Page 16240
According to the plaintiff, the crux of this issue comes down to the interpretation of § 19a-87b-10(j)(3) of the Regulations, specifically, whether the regulation at issue provides a clear standard by which a licensed daycare operator can be held to suspect abuse. Section 19a-87b-10(j)(3) of the Regulations provides:
 The provider shall report actual or suspected child abuse or neglect of any child to the nearest office of the Department of Children and Families as mandated by Section 17a-101 and 17a-102 of the Connecticut General Statutes. An oral report shall be made immediately by telephone or otherwise to the State Commissioner of the Department of Children and Families or his representative, or the local police department, or the state police, to be followed by a written report as required by law.
The plaintiff contends that DPH's interpretation of the regulation is an untenable standard that relies on hindsight and substituting DPH's judgment for another's. The plaintiff contends that this was clearly an unwarranted exercise of discretion for the DPH's hearing officers to conclude that the plaintiff's license should be revoked based upon a subjective and retroactive finding that the plaintiff failed to accurately suspect abuse. (Respondent/Appellant's Brief, p. 9.)
DPH argues that the plaintiff's argument ignores the statutory language of General Statutes §§ 17a-101 and 17a-102, which are incorporated by reference into the regulation. General Statutes § 17a-101 requires child care providers to notify DCF whenever they have "reasonable cause to suspect or believe" that a child has been abused or neglected. Subsection (h) of that section provides for immunity for any persons who make such reports in good faith. Section 17a-101b subjected mandated reporters to a fine of up to $500 for a failure to report suspected abuse.[1] The provisions of General Statutes §17a-101 reflect the state of Connecticut's strong public policy of encouraging mandated reporters to report actual and suspected child abuse to the appropriate authorities and agencies. Zamsteinv. Marvasti, 240 Conn. 549, 559-60 (1997).
Reasonable cause is synonymous with probable cause. See, e.g., Adriani v. Commission on Human Rights Opportunities,220 Conn. 307, 316 (1991). "Probable cause is a bona fide belief in the existence of facts essential under the law for the action andCT Page 16241such as would warrant a man of ordinary caution, prudence andjudgment, under the circumstances, in entertaining it. . . . Probable cause is a flexible common sense standard. . . . It ideals with probabilities, and the application of the factual and practical considerations of everyday life on which reasonable and prudent men act." (Citations omitted; emphasis in original; internal quotation marks omitted.) Adriani v. Commission on HumanRights Opportunities, 228 Conn. 545, 549-50 (1994), quotingAdriani v. Commission on Human Rights Opportunities, supra,220 Conn. 316.
Here, the plaintiff essentially invites this court to adopt a subjective test to determine when a mandated reporter should suspect child abuse. However, this subjective test runs counter to the public policy of this state codified at General Statutes § 17a-101 et seq., and elucidated in Zamstein v. Marvasti, supra, 240 Conn. 549. Under the plaintiff's proposed subjective test, a mandated reporter could frustrate the public policy of prompt reporting of suspected child abuse by simply insisting that he or she failed to suspect child abuse, regardless of the reasonableness of his or her inaction as measured by the facts. In order to effectuate the public policy of this state, the test for reasonable cause must remain objective, that is, that which would warrant a person of ordinary caution, prudence and judgment, under the circumstances, to act. Of course, this necessarily involves a factual determination. Here, there was substantial evidence in the record to support the hearing officer's conclusion that DPH had sustained its burden of proof, as required by Dolgner v. Alander, 237 Conn. 272 (1996), on the charges. The legal standard utilized by the hearing officer was correct, as enunciated in the pertinent regulations, statutes, and case law.
The second issue raised by the plaintiff is whether the hearing officer's factual findings, conclusions and decisions were clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. The plaintiff argues that the DPH decision does not pass muster under General Statutes § 4-183(j)(5).[2]
The court's "review of an agency's factual determination is constrained by General Statutes § 4-183(j), which mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court CT Page 16242 finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. . . . This limited standard of review dictates that, with regard to questions of fact, it is neither the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency. . . . An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The burden is on the plaintiffs to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record. . . ." (Brackets omitted; citations omitted; internal quotation marks omitted.) New England Cable Television Assn., Inc. v. DPUC,247 Conn. 95, 117-18 (1998).
In the present case, the plaintiff again argues that the objective reasonable cause standard employed by DPH was incorrect, and that the proper standard should be the subjective standard of what suspicion the child abuse this plaintiff possessed. The plaintiff's subjective test argument has been addressed above.
Here, the substantial evidence rule fully supports the DPH determination that as a mandated reporter, the plaintiff had reasonable cause to suspect or believe that the children had been abused. There was evidence presented at the hearing that the plaintiff contemporaneously recorded or documented in her daily log or on a calendar, numerous incidents when the children would be brought to the plaintiff's daycare with burns, bruises, chronic ear infections and other illnesses which were not addressed, and bleeding buttocks, which are all indicia of abuse and neglect. The plaintiff told Carol Peltier, a visiting instructor from the American School for the Deaf, that she was concerned about the welfare of the children. Ms. Peltier viewed burn marks on "M's" back at the request of the plaintiff. At that time, the plaintiff told Ms. Peltier that she intended to report the children's burns and bruises to the authorities. At the hearing, Ms. Peltier testified that the plaintiff's other CT Page 16243 concerns related to "M's" chronic illnesses and continued and prolonged ear infections with no medical intervention, which Ms. Peltier stated could have serious consequences for "M" who had profound hearing loss. Of course, Ms. Peltier's testimony concerning her discussions with the plaintiff occurred while the two children were in the plaintiff's care.
Subsequently, the plaintiff told two other individuals who testified at the hearing, one of whom was a DCF investigator, that she, the plaintiff, felt that the two children were victims of abuse while in her care.
The foregoing factual findings, together with other evidence before the hearing officer, fully support the DPH conclusions in this matter. It is true that there was other evidence in the record, including the plaintiff's testimony, which conflicted with the DPH determination. However, the hearing officer was entitled "to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part." Bancroft v.Commissioner of Motor Vehicles, 48 Conn. App. 391, 400, cert. denied, 245 Conn. 917 (1998); see also Settani v. Commissioner ofMotor Vehicles, 48 Conn. App. 418, cert. denied, 245 Conn. 916
(1998). The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. Dolgner v.Alander, supra, 237 Conn. 281.
Here, there is substantial evidence in the whole record to support the DPH decision to revoke the plaintiff's family daycare license.
Based on the foregoing, this court finds that the legal standard employed by DPH was correct and that there is substantial evidence in the record to support the DPH decision in this matter. Accordingly, the plaintiff's administrative appeal is dismissed.
Michael Hartmere, Judge