[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant, Dr. Michael Pierce, moves to strike Counts two, four, eight and ten set forth in the plaintiffs amended complaint dated July 2, 2001. His claim that these counts should be stricken is based on the following:
 1. Dr. Pierce is immune from liability pursuant to the mandatory requirements imposed on him as a medical provider for elderly and nursing home patients.
 2. Dr. Pierce owed no legal duty to apprise the plaintiff of the medical condition of his patient (the plaintiffs father)in the plaintiffs capacity as a conservator of his father's person and/or estate.
 3. Counts four and ten, sounding in fraud, are based on insufficient factual allegations to support a claim of fraud.
 4. These counts were previously stricken by this Court in May 2001 (Sferrazza, J.) and the amended complaint is merely a change in form, not substance.
A careful reading of the amended complaint leads the Court to conclude that it changes the substance of the complaint from a claim that Dr. Pierce was negligent in finding high levels of arsenic in the plaintiffs ward and reporting those findings to the police. Judge Sferrazza found that Connecticut General Statutes § 17b-407 (e) granted Dr. Pierce immunity from liability as a mandated reporter, and further concluded Dr. Pierce did not have a duty to follow up on his complaint to ascertain the outcome.
As amended, the complaint now states a claim of common law negligence alleging that Dr. Pierce negligently failed to keep the plaintiff, in his capacity as a conservator, apprised of his ward's medical condition, and CT Page 885 refused or failed to do so even though the plaintiff requested that information. These are not the same allegations raised in the prior complaint which were addressed by Judge Sferrazza and are subject to independent review by this Court.
This Court concludes that the amended complaint, which is not based on negligent reporting or follow up investigation, does not implicate the immunity provisions of Connecticut General Statutes § 17b-407 (e).
Turning to a discussion of whether Dr. Pierce had a duty to disclose to the plaintiff conservator the medical condition of his ward, the existence of a legal duty is a "legal conclusion about relationships between individuals, made after the fact and imperative to a negligence cause of action. " RK Constructors, Inc. v. Fusco Corp. , 231 Conn. 381. 384 (1994). The test is one of forseeability, that is would the ordinary prudent person, knowing what he knew, or should have known. anticipate harm likely to result.
The defendant cites the case of Zamstein v. Marvasti, 240 Conn. 549
(1997) for his proposition that Dr. Pierce owed no legal duty to the plaintiff. Zamstein involved the duty of a psychiatrist hired to evaluate two children for sexual abuse, to the father of the children, who was suspected abuser. That case turned on public policy considerations of protecting evaluators of victims of sexual abuse and not to discourage professionals who are called on to evaluate those victims. This Court can discern no such public policy considerations in this case.
The case of Ortiz v. Waterbury Hospital, CV 99-0154112 S, J.D. of Waterbury (March 9, 2000) also cited by the defendant likewise turned on public policy considerations when sexual abuse of a minor was alleged.
In the present case, the complaint is brought by the plaintiff individually and as executor of the estate of his father. According to the complaint he was appointed as Conservator of the estate and person of his father by the Probate Court in October 1997. On December 1, 1997, another person, Marilyn Pepin, was appointed conservator of the person of the father, but the plaintiff continued on as a conservator of the estate until March 1998, when the plaintiff again received the duties of both conservatorships.
At all relevant times, the plaintiff was a conservator of his father's estate or both his estate and his person.
Under General Statutes § 45a-644, a conservator of the estate shall supervise the financial affairs of the incapable person and shall CT Page 886 manage all the estate and apply so much of the net income thereof and, if necessary, any part of the principal of the property which is required to support the ward and those members of the wards family whom he or she has the legal duty to support and to pay the ward's debts, and may sue for and collect all debts due the ward.
In managing an estate a conservator has broad authority. See SocialServices v. Saunders, 247 Conn. 686, 707 (1999).
Here the plaintiff had an obligation to manage the estate, in a manner that protects the rights and interests of his father and bringing a negligence action is within his management. See Garris v. SummervilleHealth Care Group, No. CV 01-0085059 S (May 29, 2002), Superior Court, Judicial District of Litchfield and cases cited therein. The plaintiff, standing in the shoes of his ward, clearly was entitled to be apprised of the medical condition of his father when he was conservator of his person. Even as conservator of his estate, it was relevant to his duties to manage the assets of the estate to be aware of his father's health status and the need for continuing nursing home care. His allegations that Dr. Pierce negligently failed to inform him of the father's health, even when requested to do so, survive the Motion to Strike.
The Court does agree that the complaint fails to allege facts supporting fraud. There are no factual allegations of bad faith or deliberate lying for example, or other dishonest purpose.
Accordingly, the Motion to Strike is granted as to Counts four and ten (fraud) and denied as to Counts two and eight (negligence).
 ___________________, JTR Klaczak
CT Page 887