Submitted on briefs July 7, 1972, affirmed June 21, 1973

# JOHN DEERE INDUSTRIAL EQUIPMENT COMPANY, INC., *Respondent, v.* DELPHIA, *Appellant.*

511 P2d 386

Julian Herndon, Jr., and Atma Singh Mann, Portland, for appellant.

John R. Faust, Jr., and Cake, Jaureguy, Hardy, Buttler & McEwen, Portland, for respondent.

BRYSON, J.

Plaintiff, a farm equipment manufacturer, brought this action to recover possession of a tractor from defendant, a farmer. In the alternative, plaintiff demanded judgment in the sum of $8,053.13. After a trial without a jury, the court allowed judgment for plaintiff to recover from defendant the possession of the John Deere Model 350 Industrial Crawler tractor with dozer and, in the alternative, if the described tractor was not delivered to plaintiff, then plaintiff to have judgment against the defendant in the sum of $8,053.50.

A review of the facts and voluminous pleadings reveals the following. Defendant originally purchased the tractor from T-C Equipment, Inc., for $10,000 pursuant to a written "purchase order" which provided that defendant would pay the balance of the amount due in cash or execute a time sales agreement, plus additional charges shown thereon, on or before delivery of the equipment.

The defendant elected not to pay cash, and on July 25, 1969, T-C Equipment and the defendant executed a retail installment contract which provided for a finance or time price differential charge, leaving a

---

* McAllister, J., did not participate in the decision of this case.

contract balance of $9,312.08, payable in 36 monthly payments of $258.51.

The contract also provided credit life insurance in favor of the defendant in the amount of the indebtedness and physical damage insurance on the tractor at no additional charge.

T-C Equipment, Inc., filed a financing statement and perfected its security interest. Thereafter, on August 8, 1969, T-C Equipment, Inc., assigned to plaintiff all of its title and interest in and to the contract, the tractor, and the security interest. Upon execution of the contract defendant took possession of the tractor but made no monthly payments to plaintiff as required by the contract. Defendant claimed that an employee of T-C Equipment, Inc., misrepresented the rate of interest to be charged defendant on the contract balance; "[t]hat the rate of interest should [sic] be charged on the agreement involved was to be at 7.5% per year," and that the interest rate charged was "in fact, 14.4% per annum."

Plaintiff filed this action on March 11, 1970, because of defendant's refusal to make the required monthly payments and demanded possession of the tractor or the sum of $8,053.15 in the alternative (not $9,312.08, the time balance of the retail installment contract). On July 21, 1970, plaintiff filed a replevin bond, but on the same date defendant filed an undertaking for redelivery of the tractor and still retained possession of it at the time of trial, some eighteen months after plaintiff filed the complaint and twenty-two months after execution of the contract.

The defendant's second amended answer and counterclaim generally denied the allegations of plaintiff's complaint and alleged five affirmative defenses; namely, rescission for material misrepresentation; the

purchase agreement constituted a loan with a usurious rate of interest; class action on behalf of all persons who had purchased farm implements from John Deere Industrial Equipment under similar allegedly usurious contracts; the purchase agreement violates the Federal Truth in Lending Act,[①] and this violation justifies rescission by defendant; class action on behalf of all persons who have been the victims of violations of the Federal Truth in Lending Act or regulations thereunder by John Deere Industrial Equipment in similar consumer credit transactions.

The court sustained plaintiff's demurrer to each of the five affirmative defenses. Defendant filed a third amended answer and counterclaim which substantially realleged the previous answer. Plaintiff moved against the third amended answer and the court allowed plaintiff's motion to strike all of the affirmative defenses, except the defense that the contract was usurious.

The case ultimately went to trial on plaintiff's complaint and defendant's sixth amended answer, affirmative defense and counterclaim which alleged that the purchase agreement represented an extension of credit at a usurious rate of interest.

Defendant assigns as error the court's order "in allowing the motion to strike the defence that the agreement in question violated Federal Truth in Lending Act."

■ As hereinafter set forth, defendant concedes that "* * * the Truth in Lending Act Section 16 Title 15 USC does not allow rescission in this case * * *." Under the pleadings of this case we agree and, therefore, the trial court did not err in this respect.

---

[①] 15 USCA § 1601 *et seq.* (West Supp 1973).

■ Defendant also assigns as error the order of the court sustaining the demurrer to each of defendant's class actions. In *Amer. Timber/Bernard v. First Nat'l,* 263 Or 1, 11, 500 P2d 1204, 1208 (1972), we held "there is no such thing as a class action in Oregon, * * *" as distinguished from a class suit. Even if we assume that the defendant was attempting to institute two class suits within the terms of ORS 13.170,[2] we are of the opinion that the trial court properly allowed the demurrer. In both cases, defendant alleged that he had purchased the farm equipment from T-C Equipment, Inc., but that the class for whom defendant was counterclaiming was composed of "many persons who have purchased farm implements from John Deere Industrial Equipment Company, Inc." We conclude that defendant has not demonstrated the requisite community of interest with the represented class if defendant and the class purchased their farm machinery from different legal entities and no agency between the two entities was pleaded. *See Lonsford et al. v. Burton et al.,* 200 Or 497, 267 P2d 208 (1954), wherein it was held that the interests of the plaintiffs and those they sought to represent were not so identical as to warrant maintenance of a class or representative suit.

Defendant next contends that the court erred "in not finding the transaction usurious, in finding the transaction a sale of chattel but not a loan, and in finding that the time price differential is applicable to

---

[2] ORS 13.170 states in part:

"* * * When the question is one of a common or general interest of many persons, or when the parties are very numerous, and it may be impractical to bring them all before the court, one or more may sue or defend for the benefit of the whole."

said transaction." The trial court entered written findings of fact to this effect.

■ The issue here is whether there is any evidence to support the court's finding that the transaction here involved was a sale and not a "loan or use of money" within the terms of the usury statute, ORS 82.110. Proof of a loan is vital to a defense of usury, and the proof of usury must be "plain, positive and palpable." *Blue River Sawmills et al v. Gates et al,* 225 Or 439, 358 P2d 239 (1961). ORS 82.120 provides:

"(1) In the trial of any cause involving the defense of usury * * *

"(2) [t]he burden of proof to establish usury is upon the party imposing that defense * * *.

"* * * * *."

■ ■ The generally accepted rule concerning cash price and credit price sales is stated as follows:

"If the negotiations between seller and buyer involve a bona fide quotation of both a cash price and a credit price, the transaction does not involve usury, even though the quoted credit price is such as to exceed the cash price plus lawful interest thereon." 14 ALR3d 1064, § 4, at 1077, covering opinions of some 33 state, federal, and District of Columbia courts.

If the transaction is a sale, and not a loan of money, a vendor of property may lawfully fix one sale price for cash and another higher sale price for credit. *United States v. Commercial Credit Corp.,* 242 F2d 57 (5th Cir 1957). The uncontradicted testimony and the agreements between the parties received in evidence prove convincingly that defendant was offered two alternative prices, a cash price and a time credit price. Defendant elected to purchase under the terms of the time price agreement. This fact, and the entire lack

of evidence of any scheme or artifice to extract a usurious rate of interest from defendant, leads us to conclude that the trial court's holding was supported by the evidence and no error was committed in this respect.

■ The defendant next designates as error the court's sustaining the plaintiff's objection to the defendant's testimony that "* * * I was told by the salesman of T-C Equipment Company that the interest rate was seven-and-a-half percent * * *."

Assuming, arguendo, that the testimony should have been received, we do not believe that such ruling was so prejudicial as to require reversal in this case. The trial court allowed the defendant to give the testimony as an offer of proof. The contract and other writings that established the cash price and the time price differential were received in evidence. The trial court certainly understood the defendant's theory and concluded that the transaction was a sale of the chattel and not a loan. Further, one of plaintiff's objections to the proffered testimony was as follows:

"MR. McEWEN: * * * Two, there's no issue tendered in the pleadings of misrepresentation as to the interest rate."

A review of the pleadings discloses there were no allegations in the defendant's answer to raise the issue at the time of trial.

Defendant also asserts that the court erred in sustaining the plaintiff's demurrer to the defense of rescission for material misrepresentation. The demurrer was allowed to the fifth affirmative defense of defendant's second amended answer and counterclaim. Defendant alleges that he operated a farm and pur-

chased the tractor "from T-C Equipment"; that Flack, an employee of T-C Equipment, represented to defendant that the rate of interest on the contract balance would be 7.5 percent per annum and this representation was false; the interest rate was in fact 14.4 percent per annum; that plaintiff John Deere is the present holder and owner of the promissory note, part of the retail installment contract, and that defendant relied upon this representation.

The plaintiff contends that the defendant alleged, and the pleading shows on its face that T-C Equipment, seller-assignor, made the representation, "not the plaintiff-assignee, and the contract incorporated in defendant's answer contains a provision that defendant will not assert against any assignee a defense that he might claim against the seller-assignor." The contract provided:

> "I (we) will settle all claims of any kind against seller directly with seller and if seller assigns this note I (we) will not use any such claim as a defense, setoff or counterclaim against any effort by the holder to enforce this instrument."

The defendant argues that ORS 83.670 (5) and 83.150 render this provision of the contract unenforceable as to the defendant and that he may assert against plaintiff any defense he may have had against T-C Equipment, the assignor from whom he purchased the tractor.

ORS 83.670 (5) and 83.150 are part of ORS Chapter 83 concerning "Retail Instalment Contracts," of "Motor Vehicles," "Goods," and "Home Solicitation Sales," and provide:

> "83.670 (5) No provision in a retail instalment contract relieving the seller from liability for any

legal remedies which the buyer may have had against the seller under the contract, or any separate instrument executed in connection therewith, is enforceable."

"83.150 No provision of a retail instalment contract or retail charge agreement shall be valid.

"(1) By which the buyer agrees not to assert against the seller or against an assignee a claim or defense arising out of the sale.

"* * * * *."

ORS 83.670 is that part of the Act dealing with "motor vehicles." "Motor vehicles" are defined by ORS 83.510:

"ORS 83.510 (5)(a) A self-propelled device used for transportation of person or property upon a public highway.

"(b) A trailer, semitrailer or trailer home. The term does not include *tractors,* power shovels, road machinery, *agricultural machinery,* or other machinery not designed primarily for highway transportation * * *." (Emphasis supplied.)

"Goods" are defined by ORS 83.010 (2), which provides:

" 'Goods' means all chattels personal, other than motor vehicles as defined in ORS 83.510, when purchased primarily for personal, family or household use and *not for commercial or business use,* * * *." (Emphasis supplied.)

█ It is clear that the statutory provisions are not controlling where the contract involves the purchase of a tractor-dozer for agricultural use.

ORS 79.2060 (1), the Uniform Commercial Code, provides:

"(1) Subject to any statute or decision which establishes a different rule for buyers of consumer

goods, an agreement by a buyer that he will not assert against an assignee any claim or defense which he may have against the seller is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under ORS 73.1010 to 73.8050 on commercial paper. *A buyer who as part of one transaction signs both a negotiable instrument and a security agreement makes such an agreement.*" (Emphasis supplied.)

ORS 71.2010 (20) provides:

" 'Holder' means a person who is in possession of a document of title or an instrument or an investment security drawn issued or indorsed to him or to his order or to bearer or in blank."

ORS 73.3020 provides:

"(1) A holder in due course is a holder who takes the instrument:

"(a) For value; and

"(b) In good faith; and

"(c) Without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

"(2) A payee may be a holder in due course.
"* * * * * ."

ORS 73.3030 provides:

"A holder takes the instrument for value:
"* * * * * .

"(2) When he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due; or
"* * * * * ."

ORS 79.1090 provides:

"(1) 'Consumer goods' if they are used or

bought for use primarily for personal, family or household purposes.

"* * * * *."

■ On the basis of the allegations in defendant's fifth affirmative defense, which contains no allegations of bad faith on the part of plaintiff-assignee or of its participation as principal in the sale of the tractor or in originating the contract involved, the court did not err in allowing the demurrer.

The defendant states in his brief:

"Although it must be conceded that the Truth in Lending Act Section 16 Title 15 USC does not allow rescission in this case the defendant would ask the court to look to whole course of action here. At least two possible bases of rescission remain in the answer. They are not properly plead, but they do appear when the answer and counter-complaint is read as a whole.

"The defendant urge [sic] the court to allow the remedy of rescission to stand via an amended answer and counterclaim."

We are confused as to this argument, but it is clear that defendant elected to go to trial on the pleadings as they existed and did not move the trial court for permission to file an amended answer and counterclaim.

Affirmed.