LAUREL BANK AND TRUST COMPANY *v.*
MARK FORD, INC., ET AL.

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued November 6—decision released December 9, 1980

*William D. Allen,* with whom, on the brief, was *Dennis P. McDonough,* for the appellant (named defendant).

*David Brown,* with whom, on the brief, was *Brian W. Poirier,* for the appellee (plaintiff).

PETERS, J. This case concerns an assignee's right to enforce a waiver of defenses clause in a rental agreement. The plaintiff, Laurel Bank & Trust Company, sued the defendant Mark Ford, Inc., the lessee, and the defendant Dictograph Products, Inc., the lessor and the plaintiff's assignor, when Mark Ford, Inc. refused to make further payments on its

lease. After judgment rendered against both defendants by the trial court, *Aaronson, J.,* the defendant Mark Ford, Inc. has appealed.

The underlying facts are not in dispute. Mark Ford, Inc. (hereinafter Mark Ford), a business located in Madison, and Dictograph Products, Inc. (hereinafter Dictograph), a Meriden dealer in communications equipment, entered into two related contracts on November 23, 1973. These contracts represented the culmination of lengthy negotiations between the parties about the nature and cost of a communications system. The two contracts were the so-called rental agreement, representing an equipment lease of designated components of a telephonic communication system, and a rental maintenance agreement obligating the lessor to provide repair services for the equipment. At the same time, the parties executed three other documents. One was a financing statement, a UCC-1 form, to permit filing pursuant to Article 9 of the Uniform Commercial Code, General Statutes §§ 42a-9-401 and 42a-9-402. The second was a delivery certificate certifying that the equipment had been furnished and installed in good condition on the Mark Ford premises. The third was an agreement rider giving the lessee the option to buy the equipment for the payment of one dollar at the end of the leasehold term upon payment of the sixty monthly instalments required by the rental agreement. These transactions, as the trial court correctly concluded, constituted the execution of a security agreement. See General Statutes §§ 42a-9-203 and 42a-1-201 (37); *Granite Equipment Leasing Corporation* v. *Acme Pump Co.,* 165 Conn. 364, 367–68, 335 A.2d 294 (1973). Because the collateral subject to the secur-

ity interest was in the form of specific goods, the security agreement constituted chattel paper under General Statutes § 42a-9-105 (1) (b).[1]

Three days after the execution of the rental agreement, the maintenance agreement, and the other related documents described above, Dictograph assigned its interest in the chattel paper to the Laurel Bank & Trust Company (hereinafter the bank). The terms of the rental agreement expressly contemplated such a possibility. In the rental agreement, Mark Ford consented to the assignment and agreed not to assert against the assignee any claim or defense whatsoever which it might have against Dictograph. In return for the payment of $24,227.28, the bank received an assignment from Dictograph, accompanied by the rental agreement, the UCC-1 form, and the delivery certificate but not by the rental maintenance agreement or the agreement rider. At the time of the assignment, neither Mark Ford nor Dictograph was as yet in default with respect to the obligations contained in the rental agreement or the maintenance agreement.

Mark Ford made six of the sixty payments specified in the rental agreement but refused to make further payments because of the alleged failure of Dictograph to make needed repairs as stipulated in the maintenance agreement. The bank thereupon brought the present suit and recovered damages of

---

[1] "[General Statutes] Sec. 42a-9-105. DEFINITIONS AND INDEX OF DEFINITIONS. (1) In this article unless the context otherwise requires . . . (b) 'chattel paper' means a writing or writings which evidence both a monetary obligation and a security interest in or a lease of specific goods, but a charter or other contract involving the use or hire of a vessel is not chattel paper. When a transaction is evidenced both by such a security agreement or a lease and by an instrument or a series of instruments, the group of writings taken together constitutes chattel paper."

$28,690.20 in the trial court. Mark Ford's defense, here and in the trial court, is that it had the right to refuse to pay the bank because of the default of Dictograph.

As the trial court held, this case is governed by § 9-206 (1) of the Uniform Commercial Code, General Statutes § 42a-9-206 (1). That section provides: "AGREEMENT NOT TO ASSERT DEFENSES AGAINST ASSIGNEE; MODIFICATION OF SALES WARRANTIES WHERE SECURITY AGREEMENT EXISTS. (1) Subject to any statute or decision which establishes a different rule for buyers or lessees of consumer goods, an agreement by a buyer or lessee that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under article 3. A buyer who as part of one transaction signs both a negotiable instrument and a security agreement makes such an agreement."

Mark Ford falls within the operative provisions of § 9-206 (1) because the goods it leased are, with respect to Mark Ford, equipment and not consumer goods. The classification of goods is determined not by the uses to which they *may* be put, but by the uses to which they *are* put by a particular buyer or lessee. General Statutes § 42a-9-109 (1); U.C.C. § 9-109 (1), comment 2 (1972 official text); 1 Gilmore, Security Interests in Personal Property § 12.3 (1965). The case of *Fairfield Credit Corporation* v. *Donnelly,* 158 Conn. 543, 264 A.2d 547 (1969), is therefore inapposite.

Section 9-206 (1) allows the bank to recover because Mark Ford signed a waiver clause agreeing not to assert against an assignee such as this plaintiff the claims or defenses it might have against Dictograph. Mark Ford does not deny that its rental agreement contained such a clause, but it does argue that the bank has not met the conditions that qualify its rights under § 9-206. It is undisputed that the bank paid value. No evidence was presented that the bank lacked good faith other than the disclosure that the president of Dictograph was a director of the bank. That disclosure does not, by itself, demonstrate lack of "honesty in fact in the transaction concerned," which is the definition of good faith in General Statutes § 42a-1-201 (19). Accord, *Hartford National Bank & Trust Co.* v. *Credenza,* 119 Conn. 368, 371, 177 A. 132 (1935). Nor can the bank be charged with notice of claims or defenses arising out of failures to repair which had not, at the time of the assignment, been foreseen or alleged. See General Statutes § 42a-1-201 (25) for the statutory definition of notice, and compare §§ 42a-3-302 and 42a-3-304, which make it clear that notice is to be determined as of the time when an instrument is taken.

Mark Ford argues, finally, that § 9-206 should not be enforced because it is void as against public policy. We do not agree. A statute declares public policy. If that statute is constitutional it "can never . . . be declared to be against public policy." *General Motors Corporation* v. *Mulquin,* 134 Conn. 118, 132, 55 A.2d 732 (1947). The legislature might reasonably conclude that the free assignability of chattel paper facilitates access to financial markets that

might otherwise be foreclosed.[2]   It is noteworthy moreover that the effect of § 9-206 is to limit rather than to expand the enforceability of contractual waiver of defenses clauses, since enforcement under the statute depends upon a showing of value, good faith and absence of notice of adverse claims or defenses.  Section 9-206 thus represents a balancing of the interest of the obligor to preserve his defenses and of the creditor to preserve the free marketability of chattel paper.  As have other courts that have addressed this issue, we find no reason to doubt the power of the legislature to validate waiver of defenses clauses in a commercial setting.  See, e.g., *Bankers Trust Co.* v. *Litton Systems, Inc.,* 599 F.2d 488 (2d Cir. 1979); *F.D.I.C.* v. *Kassel,* 72 App. Div. 2d 787, 421 N.Y.S.2d 609 (1979); *ITT-Industrial Credit Co.* v. *Milo Concrete Co.,* 31 N.C. App. 450, 229 S.E.2d 814 (1976); *John Deere Industrial Equipment Co.* v. *Delphia,* 266 Or. 116, 511 P.2d 386 (1973).

There is no error.

In this opinion the other judges concurred.

---

[2] Commercial law, in related areas such as the negotiation of negotiable instruments and the issuance of letters of credit, has long recognized the desirability of permitting obligations to pay money to be separated from obligations to assume responsibility for the underlying transactions in goods and services.  See White & Summers, Uniform Commercial Code §§ 14-1, 18-2 (2d Ed. 1980). It is likely that, without a waiver clause, this chattel paper would not have been readily marketable.  The lessor might well have refused to enter into a five year contract with the lessee had the lessor's access to financing been so impaired.  Had the lessee been required to obtain five year financing of its own to enable it to acquire this equipment, it would not ordinarily have been able to assert against its lender any defenses or claims that subsequently arose against the lessor.