**BRM INDUSTRIES, INC., Plaintiff,**

v.

**MAZAK CORPORATION and The CIT Group/Equipment Financing, Inc., Defendants.**

**No. 3:98cv1800 (WWE).**

United States District Court, D. Connecticut.

Feb. 8, 1999.

Madelyn M. Huffmire, Mansfield Center, CT, for BRM Industries, Inc.

Joseph G. Fortner, Jr., David Robert Levesque, Halloran & Sage, Hartford, CT, Brian S. Sullivan, Dinsmore & Shohl, Cincinnati, OH, Thomas A. Prewitt, Dinsmore & Shohl, Covington, KY, for Mazak Corp.

Pierre-Yves Kolakowski, Zeichner, Ellman & Krause, Greenwich, CT, for CIT Group/Equipment Financing, Inc.

*RULING ON DEFENDANT MAZAK CORPORATION'S MOTION TO DISMISS FOR IMPROPER VENUE OR TO TRANSFER AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND DEFENDANT CIT GROUP/EQUIPMENT FINANCING'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM*

EGINTON, Senior District Judge.

In 1996, defendant Mazak Corporation ("Mazak") sold two items of machine tool equipment to plaintiff BRM Industries, Inc. ("BRM"). Defendant CIT Group/Equipment Financing ("CIT") was not involved in the sales transaction but was, until October 5, 1998, an assignee of the equipment lease between Mazak and BRM pertaining to the two machines.

BRM's complaint alleges four counts against both Mazak and CIT. Specifically, BRM claims that the defendants' failure to repair the equipment in a timely manner and to provide an acceptable level of performance constitutes a breach of warranty obligations under the contract, a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), misrepresentation, and negligence.

Mazak has filed a motion to dismiss the action for improper venue or to transfer it to the federal court in the eastern district of Kentucky. Both Mazak and CIT have moved for dismissal of the complaint for failure to state claims upon which relief can be granted.

## BACKGROUND

The plaintiff BRM is a Connecticut corporation with its principal office in Stafford Springs, Connecticut. BRM manufactures precision machine parts.

The defendant Mazak is a New York corporation with its principal place of business in Florence, Kentucky. Mazak sells machine tools and related equipment, such as high speed lathes and cutting machines.

The defendant CIT, an equipment financing business, is a New York corporation with its principal place of business in Livingston, New York.

On February 19, 1996, BRM ordered a Vertical Turning Center 20B ("VTC") and a Quick Turn 20N ("QT") from Mazak. Prior to that date, Mazak had sent BRM an initial pre-contract proposal, which stated Mazak's terms and conditions of sale. These terms and conditions included a clause mandating that all disputes related to the sale be governed by Kentucky law and be brought in either the Kentucky state courts or the federal court in the eastern district of Kentucky. Mazak also provided for an express limited one-year warranty for repair and replacement of the VTC and QT, disclaiming any warranties of merchantability or fitness for a particular purpose.

These terms and conditions were also stated in the acknowledgments sent to BRM in response to the order of each machine, and in the form that BRM executed upon complete installation of each machine.

Mazak as lessor and BRM as lessee entered into an equipment lease pertaining to the VTC and QT. BRM also signed a lease guaranty. The lease was formulated to grant Mazak a security interest in the equipment as security for BRM's obligations under the lease. These terms and conditions allowed Mazak to assign the lease. Further, BRM agreed not to assert against an assignee any claims and defenses that it could make against Mazak, although BRM could still assert such claims against Mazak after an assignment.

Additionally, BRM executed and delivered a Delivery and Installation Certificate ("Certificate") to CIT. The Certificate affirmed that BRM agreed to hold CIT harmless from claims BRM could assert against Mazak. Thereafter, CIT accepted a full recourse assignment of the lease from Mazak. By the assignment, CIT gained only a security interest in the leased property, while Mazak retained title and ownership in the leased property.

BRM asserts that the VTC and QT proved latently defective. Further, BRM claims that Mazak's failure to repair the machines until September of 1997 constituted an undue delay, resulting in losses to BRM's business.

The Court will first consider the merits of Mazak's motion to dismiss for improper venue or to transfer.

## DISCUSSION

A. *Mazak's Motion to Dismiss for Improper Venue or To Transfer*

Mazak argues that the forum selection clause compels the Court either to dismiss the action for improper venue or to transfer it to the eastern district of Kentucky. Mazak claims that the forum selection clause should be enforced unless shown to be unreasonable according to the standard articulated in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Mazak asserts that BRM cannot demonstrate that enforcement of the forum selection clause would be unreasonable and unjust or that the clause is invalid for such reasons as fraud and overreaching.

In its brief, Mazak has ignored *Stewart Organization, Inc. v. Ricoh Corporation*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), which establishes that the Court should first consider whether Section 1404(a) controls the request to give effect to the forum selection clause. As the Second Circuit has clarified, Section 1404(a) analysis applies where the forum selection clause allows the court to transfer the case to another federal court. *See Jones v. Weibrecht*, 901 F.2d 17, 18 (2d Cir.1990). The more rigid analysis of *M/S Bremen* is appropriate where the forum selection clause mandates a state or foreign venue. In that instance, the federal court is improper and the court must dismiss the action pursuant to Section 1406(a). *Hask-*

*el v. FPR Registry, Inc.*, 862 F.Supp. 909 (E.D.N.Y.1994).

■ As its threshold inquiry, the Court must determine whether the Connecticut district court represents a proper venue pursuant to Section 1391(a) when jurisdiction is based solely on diversity. The Connecticut district court is a proper venue because a substantial portion of the events giving rise to the claim occurred in this district. Where a venue is proper under the federal statute, the existence of a forum selection clause providing for a different venue does not make that district "wrong" within the meaning Section 1406(a). *TUC Electronics, Inc. v. Eagle Telephonics, Inc.*, 698 F.Supp. 35, 38 (1988). Thus, the action will not be dismissed or transferred as an improper venue under Section 1406(a).

The forum selection clause permits litigation in the federal court in the eastern district of Kentucky, which is also a proper venue as Mazak would be subject to personal jurisdiction there. Accordingly, this Court must consider whether transfer is appropriate in the interests of justice pursuant to the analytical framework of Section 1404(a).

■ The appropriateness of transfer is considered according to an individualized case-by-case review of elements of convenience and fairness. *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Although a plaintiff's choice would normally be given deference, once a mandatory forum selection clause is determined to be valid, the plaintiff bears the burden of showing why the contractual provision should not be enforced. *Haskel*, 862 F.Supp. at 916. Plaintiff has not adequately demonstrated that the forum selection clause is unenforceable due to fraud or unequal bargaining power. However, plaintiff asserts that the Kentucky forum is unreasonable because the dispute's underlying facts all took place in Connecticut and non-party witnesses would be seriously inconvenienced.

■ A motion to transfer calls on the district court to weigh and balance a number of specific factors. *Stewart*, 487 U.S. at 29, 108 S.Ct. 2239. Although neither party has provided a point by point analysis of the Section 1404(a) framework, the Court will review the following relevant factors: locus of operative facts; access to evidence; convenience of *non-party* witnesses; availability of compulsory process to compel witness testimony; convenience of the parties; familiarity of the forum with governing law; trial efficiency; and the relative financial means of the parties. In addition, the forum selection clause is a significant though not dispositive factor in the transfer analysis. *Stewart*, 487 U.S. at 39–31, 108 S.Ct. 2239.

1. *The relevant factors*

a. Locus of operative facts

■ Although the contract may have been drafted by Mazak in Kentucky, all other operative facts concerning this dispute occurred in Connecticut. As BRM points out, the repair service, which is the subject of this dispute, took place in Connecticut. Accordingly, this factor weighs in BRM's favor against transfer to Kentucky.

b. Access to evidence

The Court must consider the relative ease of access to trial evidence, including location of relevant documents. The equipment in dispute is located in Connecticut, and it appears likely that the documents related to Mazak's servicing of BRM's equipment are at its office in South Windsor, Connecticut. Therefore, this factor also weighs in favor of the non-enforcement of the forum selection clause.

c. Convenience of non-party witnesses

■ Mazak has not asserted that a Kentucky forum would prove more convenient for any non-party witness. However, BRM's brief indicates that all of the service technicians and sales persons, who are

presumably non-party witnesses, reside in Connecticut. Therefore, a Kentucky forum would seriously inconvenience these witnesses. A forum selection clause is not controlling where the convenience of the witnesses strongly favors another forum. *TUC Electronics,* 698 F.Supp. at 39, n. 5, *citing, M/S Bremen,* 407 U.S. at 19, 92 S.Ct. 1907.

### d. Compulsory process to compel witness testimony

The consideration of compulsory process for uncooperative witnesses is identical to that of non-party witnesses, and therefore, this factor also weighs in favor of the clause's non-enforcement.

### e. Convenience of the parties

Given the forum selection clause, Kentucky is a convenient forum for Mazak. At the same time, litigation in Kentucky would inconvenience BRM, which is a small Connecticut corporation. Despite BRM's claim that it did not anticipate litigation against Mazak, the contractual forum selection clause created legitimate expectations that disputes would be resolved in Kentucky. In other words, by accepting such terms, BRM waived any consideration of its own convenience. *TUC Electronics,* 698 F.Supp. at 39.

### f. Familiarity of the forum with governing law

The contract between Mazak and BRM contained a choice of law clause that Kentucky law should govern this dispute, which clause the Court will enforce for the reasons discussed *infra* p. 182. Federal courts are accustomed in diversity actions to applying laws foreign to the law of their particular State. With WESTLAW and LEXIS, the Court will have access to Kentucky law. Accordingly, this factor does not substantially favor a transfer to Kentucky.

### g. Trial efficiency

Neither party has addressed the ability of the eastern district of Kentucky to hear this case. However, this Court will have the capacity to hear this case as soon as it is ready for trial. Thus, this factor does not weigh in favor of the transfer to Kentucky.

### h. Relative financial means of the parties

Mazak is a large manufacturing company, which would have few witnesses or parties to transport to Connecticut as most of the witnesses to this dispute seem to reside here. BRM, meanwhile, is a small corporation employing twelve people, which has been close to bankruptcy in the past. Litigation in Kentucky would represent a financial hardship to BRM. Therefore, this factor also weighs in favor of non-enforcement of the clause.

### 2. *The balance of the relevant factors*

The balance of the relevant factors, particularly the consideration of a Kentucky forum's inconvenience to the non-party witnesses, outweigh the significance of the forum selection clause. The Court will deny Mazak's motion to transfer the case to the eastern district of Kentucky.

### B. *Mazak's Motion to Dismiss for Failure to State a Claim*

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.;* 748 F.2d 774, 779 (2d Cir.1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated by reference. *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). When a party chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the Court may take that document into consideration without converting the motion to dismiss into one for summary judgment. *International Audiotext Network, Inc. v. American Telephone and Telegraph Co.*, 62 F.3d 69, 72 (2d Cir.1995).

1. *BRM's CUTPA claim against Mazak*

Mazak argues that BRM's CUTPA claim should be dismissed because the contractual choice of law clause in favor of Kentucky should be enforced. BRM counters that the choice law clause should not be enforced because (1) Kentucky does not bear the most significant relationship to the dispute, and (2) enforcement of the clause would contravene Connecticut public policy by causing the dismissal of BRM's CUTPA count.

In order to determine the appropriate choice of state law in a diversity action, the Court must apply the conflict of laws principles of the forum state. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Contractual choice of law provisions are enforceable under Connecticut's general choice of law rules, provided the chosen state has a substantial connection to the parties or transaction and the application of the chosen state's law is not contrary to the fundamental policies of a state with materially greater interests in the transaction. *Elgar v. Elgar* 238 Conn. 839, 850, 679 A.2d 937 (1996). Similarly,

the Connecticut Uniform Commercial Code ("UCC") allows for the enforcement of choice of law clauses when the transaction bears a reasonable relationship to the state of the chosen law. C.G.S.A. § 42a–1–105(1).

Mazak's home office and principal place of business is located in Kentucky, and Mazak's acceptance of the agreement took place in Kentucky. Thus, even though a large portion of the dispute's underlying facts took place in Connecticut, the transaction between BRM and Mazak has a substantial connection and a reasonable relationship to Kentucky. Although the application of Kentucky law will result in the dismissal of the plaintiff's CUTPA count, the public policy concerns underlying CUTPA will not be compromised as BRM may pursue similar remedies available under Kentucky law. Section 367.170 of the Kentucky Revised Statutes, for example, prohibits unfair, false, misleading, or deceptive acts or practices in the conduct of any trade. As Kentucky law applies to this action, the plaintiff's CUTPA claim will be dismissed.

2. *BRM's breach of contract claim against Mazak*

Mazak asserts that BRM's breach of contract claim is based largely on Mazak's failure to provide timely repair services or replacements after BRM discovered that the machines purchased from Mazak were defective. Mazak argues that all of the damages sought by BRM for loss of equipment use and lost sales are excluded by the terms of the Agreement. As BRM accepted the contractual limitation on damages to repair or replacement of defective parts, which remedy was satisfied when Mazak repaired the equipment, Mazak urges that BRM's claim for other contractual damages should be dismissed.

However, Mazak has failed to point out that a limitation on damages is permitted by the UCC *except* where the

circumstances cause an exclusive or limited remedy to fail of its essential purpose. KRS § 355.2–719(2). The purpose of a limited exclusive remedy fails and is thus avoided whenever the seller fails to correct the defect within a reasonable period. *Middletown Engineering Co. v. Climate Conditioning Co., Inc.*, 810 S.W.2d 57, 59 (Ky.App.1991). As BRM's complaint alleges that Mazak failed to correct the machinery's defects within a reasonable period, BRM has stated a claim upon which relief may be granted.

### 3. *BRM's negligence claim against Mazak*

■ In its second count, BRM asserts a claim for negligence based on the Mazak's failure to provide the services promised by contract. Specifically, BRM asserts that upon entering into a contract with BRM, Mazak assumed a duty to provide quality machines, which duty Mazak breached when it failed to provide the necessary repair service. BRM's negligence claim represents a mere restatement of the alleged breach of contract.

■ It is a general principle of law that a tort exists only if a party breaches a duty owed to another independently of the contract. Tort liability of parties to a contract arises from the breach of a good faith duty imposed due to the relationship of the parties rather than the contract. *See Curry v. Fireman's Fund Insurance Company*, 784 S.W.2d 176, 178 (Ky.1989) (Insured may recover in tort when insurance company acts in bad faith but claim should not be lightly entertained in view of the contractual nature of the parties' original relationship.) As Mazak has not breached a good faith duty imposed aside from the contract between the parties, BRM's negligence claim will be dismissed.

### 4. *BRM's misrepresentation claim against Mazak*

■ In the third count, BRM asserts a claim for misrepresentation, alleging that Mazak intentionally failed to provide the services promised by contract. However, according to Kentucky case law, where a person contracts to perform a service in the future but fails to do so, that failure is a breach of contract rather than a fraudulent or deceitful act. *Brooks v. Williams*, 268 S.W.2d 650 (Ky.1954). An action in fraud cannot ordinarily be predicated on representations or statements that involve mere matters of future performance. As BRM's claim is based on Mazak's failure to perform the promised services, BRM's misrepresentation count will be dismissed.

### C. *CIT's Motion to Dismiss For Failure to State A Claim*

■ BRM has asserted all of the same claims against CIT that it asserted against Mazak. CIT argues that BRM cannot bring such claims against it due to BRM's prior agreement to hold an assignee of the lease harmless.

■ As there is no choice of law provision in the lease agreement, Connecticut law governs BRM's claims against CIT. By its terms, the lease agreement is intended to create a security interest in the VTC and QT equipment, and therefore, Article 9 of the UCC applies. C.G.S.A. § 42a–9–102. An agreement to hold an assignee harmless is enforceable by an assignee who takes the assignment for value, in good faith, and without notice of a claim or defense. *Laurel Bank and Trust Company v. Mark Ford, Inc.*, 182 Conn. 437, 438 A.2d 705 (1980); C.G.S. § 42a–9–206.

In its defense, BRM asserts that this agreement is not enforceable because the VTC and QT equipment contained latent defects. However, BRM offers no authority as to how the presence of latent defects affects the enforceability of its agreement to hold CIT harmless.

BRM further suggests that the assignment was not made in good faith. BRM claims that the long business history between Mazak and CIT indicates that their relationship was less than arms length.

184

The Court is not persuaded that extensive business dealings between parties signifies anything untoward about the parties' relationship. In this case, BRM was free to negotiate the terms of the lease agreement prior to its execution but chose to accept Mazak's right to assignment.

By affidavit, BRM's president, Raymond Moorin claims that certain contract terms were inserted after his execution of the documents. BRM's brief also asserts that CIT's lease back to Mazak constitutes a fraudulent conveyance in violation of the Connecticut statutes. At present, BRM's complaint makes no allegation of fraud concerning the execution of the lease with Mazak and other documents relating to the assignment, or of CIT's lease back to Mazak. If such fraudulent circumstances did occur, BRM should consider amending its complaint. However, at present, BRM's complaint relates only to Mazak's alleged failure to perform the contract. Thus, even taking all of the complaint's allegations as true, BRM cannot assert its claims against CIT. CIT's motion to dismiss will be granted.

### CONCLUSION

Based on the foregoing, defendant Mazak's motion to dismiss for improper venue or to transfer [doc. # 17 ] is DENIED. Defendant Mazak's motion to dismiss for failure to state a claim [doc. # 17 ] is DENIED as to Count One but GRANTED as to Counts Two, Three, and Four of the complaint. Defendant CIT's motion to dismiss for failure to state a claim [doc. # 24] is GRANTED. Plaintiff is directed within 30 days to amend its complaint to conform with this ruling.