Myron J. SCHUSTER, Plaintiff,

v.

DRAGONE CLASSIC MOTOR CARS, INC., et al., Defendants.

No. 99 Civ. 2163(LAK).

United States District Court, S.D. New York.

Sept. 17, 1999.

Jeffrey R. Hellman, Zeisler & Zeisler, P.C., Bridgeport, CT, for Plaintiff.

Joseph W. Martini, Pepe & Hazard, LLP, Hartford, CT, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff in this diversity case, a collector of antique automobiles, claims that he was defrauded by the defendant dealer and its principals in two separate transactions, an alleged loan of $2,125,000 to finance defendants' purchase of a group of rare vehicles from an Italian seller and a purchase of a 1939 Bugatti Type 57. Defendants move to dismiss claims brought under the Connecticut Unfair Trade Practices Act ("CUTPA")[1] on the ground that both claims are governed by the law of New York.

### Facts

The allegations of the complaint are assumed to be true for purposes of this motion to dismiss.

### The Alleged Loan

In May 1997, defendant Emanuel Dragone ("Emanuel") held a number of conversations with plaintiff, a resident of New York, both in person at the offices of defendant Dragone Classic Motor Cars, Inc. ("Classic") in Bridgeport, Connecticut, and over the telephone. At the Bridgeport meetings, Emanuel sought to induce plaintiff to invest or lend money to finance Classic's intended acquisition from an Italian bankruptcy court of certain automobiles. In order to persuade plaintiff to put up funds, Emanuel falsely told him that Classic, he, and his brother, defendant George Dragone, had invested $1.2 million in the transaction and that one Keith Duly had invested an additional $700,000. He further falsely represented that if plaintiff lent the money, his funds would be wired directly to the Italian court.

Plaintiff, in reliance on these representations, lent $2,125,000 to the defendants. On June 4, 1997, the defendants executed a promissory note payable to plaintiff in that amount, $1,675,000 of which was payable on June 21, 1997 and the balance on September 3, 1997. The note provided also:

> "The Laws of New York State shall apply. The venue for any litigation shall be the Federal District Court, Southern District of New York or New York State Supreme Court, New York County."

Plaintiff duly advanced the $2,125,000. Defendants defaulted on the note.

### The Bugatti

On January 18, 1995, Classic sold a 1939 Bugatti Type 57 to plaintiff. In order to induce plaintiff to purchase the vehicle, Classic and Emanuel falsely represented to plaintiff that the engine merely had valve problems and that the engine would be repaired and the car delivered in perfect working order as part of the purchase price. In fact, as Classic and Emanuel knew, the vehicle had a cracked engine block, a thrown rod, and a sleeve in one of the cylinders.

### The Action

Plaintiff brought this action, which subsequently was transferred to this Court pursuant to 28 U.S.C. § 1404(a), in the United States District Court for the District of Connecticut. The complaint contains seven causes of action. The first is an action on the promissory note. The second and third allege unjust enrichment and fraud in connection with the 1997 loan. The fourth seeks recovery with respect to the 1997 loan under CUTPA. The fifth through seventh relate to the Bugatti and allege fraud, violation of CUTPA, and breach of fiduciary duty, respectively.

### Discussion

Defendants' motion to dismiss the fourth and sixth causes of action depends on the

---

1. CONN. GEN.STAT § 42–110a *et seq.*

premise that this action is governed in its entirety by the law of New York.

■ Federal courts sitting in diversity ordinarily look to the conflicts of laws principles of the forum state to determine the law supplying the rule of decision.[2] Where, as here, however, the action was commenced in another district and then transferred here, the transferee court applies the conflict of law rules of the state in which the transferor court sits.[3] In consequence, the Court looks to the law of Connecticut to determine whether a Connecticut court would apply CUTPA or the law of New York to the fourth and sixth causes of action.

Defendants argue that the Connecticut courts give full effect "to an express choice of law by the parties to a contract provided that it was made in good faith."[4] They maintain, in consequence, that the governing law clause in the promissory note requires application of New York law to the CUTPA claims in this complaint. While the general principle they espouse is sound, their argument is mistaken for two reasons.

First, the promissory note has nothing whatever to do with the 1995 Bugatti transaction. The parties never agreed that New York law would govern that contract. Hence, the governing law clause has no bearing on the sixth cause of action.

Second, while the parties did agree that New York law would govern the 1997 promissory note, the fourth cause of action is not based on the note. Rather, the essence of the claim is that plaintiff was induced by defendants' fraud to loan the money for which defendants gave the note.

■ The effect of a governing law clause in circumstances like this depends on its breadth. In *Turtur v. Rothschild Registry International,*[5] the Second Circuit considered a provision that said

"[t]his note shall be governed by, and interpreted under, the laws of the State of New York applicable to contracts ... The parties hereby consent to the exclusive jurisdiction of the courts of the State of New York to resolve any controversy or claim arising out of or relating to this contract or breach thereof."[6]

There the Circuit found the "language ... sufficiently broad to cover tort claims as well as contract claims 'arising out of or relating to'" the contract.[7] On the other hand, in *Krock v. Lipsay,*[8] the Circuit concluded that a clause providing more narrowly that "[t]his Mortgage shall be governed by and construed in accordance with the laws of the Commonwealth of the State of Massachusetts" did not encompass fraudulent misrepresentation claims.[9] The question, as the *Krock* court wrote, is whether "the express language of the provision ... [is] sufficiently broad' as to encompass the entire relationship between the parties."[10]

Connecticut courts conduct the same inquiry In *George S. May International Co. v. Cabinet Crafters, Inc.,*[11] the District Court held that a choice of law clause providing simply that an agreement would be "governed" by Illinois law did not apply

2. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

3. *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

4. *Elgar v. Elgar,* 238 Conn. 839, 848, 679 A.2d 937, 942 (1996).

5. 26 F.3d 304 (2d Cir.1994).

6. *Id.* at 309.

7. *Id.* at 310.

8. *Krock v. Lipsay,* 97 F.3d 640, (2d Cir.1996)

9. *Id.* at 645.

10. *Id.*

11. *May Int'l Co. v. Cabinet Crafters, Inc.,* No. H–88–28 (D.Conn. Aug. 10, 1988) (14 Conn. L. Trib. No. 45, p. 33–34), *cited in Messler v. Barnes Group,* No. CV 960560004, 1999 WL 61034 (D. Conn Feb. 1, 1999).

to the defendant's tort counterclaims, including a claim under CUTPA.[12] In *Messler v. Barnes Group, Inc.*,[13] a Connecticut state court similarly held that an agreement stating that it "shall be construed in accordance with" Ohio law permitted a CUTPA claim to go forward, as the provision selecting Ohio law was narrow.[14]

■ The provision in the promissory note here also is narrow. It says only that "[t]he laws of New York State shall apply" and contains no indication that this choice of law extended beyond the note. The clause contains none of the broad language, such as a reference to "any controversy or claim," that was decisive in other cases. Accordingly, the Court holds that the choice of law clause in the note does not apply in this case.

Having disposed of defendants' argument based on the governing law clause, the Court moves to Connecticut choice of law principles. As the parties agree that CUTPA claims are treated as tort actions for Connecticut conflicts purposes, the Court must confront the evolving principles governing choice of law in Connecticut tort cases.

Connecticut traditionally followed the rule of *lex loci delicti*—liability in tort cases was governed by the law of the place of the tort, typically the place where the injury was sustained.[15] In *O'Connor v. O'Connor*,[16] however, the Connecticut Supreme Court "abandon[ed] categorical allegiance to the doctrine of lex loci delicti in tort actions."[17] Reasoning that "[l]ex loci has lost its theoretical underpinnings,"[18] it held that Connecticut thenceforth would apply the choice of law rules of the Restatement (Second) of Conflict of Laws in "those cases in which application of the doctrine of lex loci would produce an arbitrary, irrational result."[19]

The ultimate reach of *O'Connor* remains to be decided. The case involved the question whether Connecticut would apply its own law or the law of Quebec to a suit by a Connecticut passenger against the Connecticut driver of a Connecticut registered vehicle which fortuitously was involved in a one car accident in Canada, a situation in which the application of Quebec law easily was characterized as arbitrary and irrational. Moreover, the court took pains to make clear that it was not then deciding "to discard lex loci in all of its manifestations."[20] Hence, the case did not adopt the Restatement principles for all tort cases.

Lower courts in Connecticut initially took divergent views of *O'Connor's* implications. One Connecticut trial court applied *lex loci delicti* to determine the law applicable in another auto accident case where the complaint failed to allege facts that would have made application of the law of the place of the accident inappropriate.[21] In *Howe v. Stuart Amusement*

**12.** *Id.*

**13.** No. CV 960560004, 1999 WL 61034 (Conn.Super.1999).

**14.** *Id.* at *9. *See also Travel Serv. Network v. Presidential Financial Corp.*, 959 F.Supp. 135, 146 (D.Conn.1997) ("A broadly-worded choice-of-law provision may govern not only interpretation of the contract in which it is contained, but also tort claims arising out of or relating to the contract."); *but see BRM Industries, Inc. v. Mazak Corporation*, 42 F.Supp.2d 176 (D.Conn.1999) (applying law of state chosen in contract provision so long as not contrary to the policies of other interested state).

**15.** *E.g., Gibson v. Fullin*, 172 Conn. 407, 411, 374 A.2d 1061, 1064 (1977).

**16.** 201 Conn. 632, 519 A.2d 13 (1986).

**17.** *Id.* at 648, 519 A.2d at 21.

**18.** *Id.*

**19.** *Id.* at 650, 519 A.2d at 22.

**20.** *Id.* at 648, 519 A.2d at 21.

**21.** *Hinds v. Drew*, No. 374980, 1990 WL 264802, at *1 (Conn.Super.Nov. 28, 1990).

*Corp.*,[22] on the other hand, another Connecticut trial court construed *O'Connor* as having held "that the most significant relationship test is the guiding choice of law rule governing all tort cases in Connecticut."[23] Federal district judges in Connecticut also initially reached different conclusions.[24] More recently, however, the trend seems to be to apply the Restatement principles quite generally.

In *Afflerbach v. Furry*[25] and *Fiori v. Oliver*,[26] two more Connecticut state trial courts adopted the view espoused in *Howe v. Stuart Amusement Corp.*, viz. that the significant relationship test applies generally in tort cases. Further, in *Reichhold Chemicals, Inc. v. Hartford Accident and Indemnity Co.*,[27] the Connecticut Supreme Court, in the course of abandoning the rule of *lex loci contractus* that formerly governed choice of law in Connecticut contracts cases, recently noted "[t]he modern trend to move away from the lex loci approach ... to the more flexible approach of the Restatement (Second)," the broad abandonment of *lex loci* in other jurisdictions, and the "outmoded" theoretical underpinnings of that doctrine.[28]

█ This Court's task, as in any diversity case, is to predict how the court of last resort of the relevant state, here Connecticut, would decide the issue now before it. In this case, New York clearly is the place in which the tort occurred, as that is where the injury—the loss of plaintiff's money—occurred. In consequence, the case squarely presents the question whether Connecticut would abandon entirely the rule of *lex loci delicti* if its Supreme Court were presented with the question. In view of the foregoing discussion, this Court is persuaded that it would do so. Accordingly, it will determine the law applicable to the claims at issue here in accordance with the Restatement.

Section 145 of the Restatement states that the applicable law is that of the state with the most significant relationship to the occurrence, taking into account the place where the injury occurred, the place where the conduct causing the injury occurred, the domiciles and places of business of the parties, and the place where the relationship between the parties, if any, is centered.[29] The significance of a state's relationship to an occurrence, according to Section 6(2), is considered in light of the needs of the interstate system, the relevant policies of the forum, the relevant policies of other interested states, the protection of justified expectations, the basic policies underlying the relevant field of law, certainty and predictability, and ease in the determination and application of the law to be applied.[30]

█ In this case, the injury occurred in New York. The conduct causing the al-

22. No. 343407, 1991 WL 273637 (Conn.Super.Dec.11, 1991).

23. *Id.* at *2.

24. *Compare McKernan v. United Tech. Corp.*, 717 F.Supp. 60, 64 n. 4 (D.Conn.1989); *Resnick v. Sikorsky Aircraft*, 660 F.Supp. 415, 418 n. 5 (D.Conn.1987); *Economu v. Borg–Warner Corp.*, 652 F.Supp. 1242, 1247–48 (D.Conn. 1987), *with Valtec Int'l, Inc. v. Allied Signal Aerospace Co.*, 1997 WL 288627 at*2 (D.Conn. 1997); *Icelandic Coast Guard v. United Tech. Corp.*, 722 F.Supp. 942, 948 (D.Conn.1989); *Feldt v. Sturm Ruger Corp.*, 721 F.Supp. 403, 404 (D.Conn.1989); *Katz v. Gladstone*, 673 F.Supp. 76, 80 n. 2 (D.Conn.1987).

25. No. CV 89 0367207, 1994 WL 260705 (Conn.Super. June 3, 1994).

26. 1994 WL 669548 (Conn.Super.Nov.15, 1994).

27. 243 Conn. 401, 703 A.2d 1132 (1997).

28. *Id.* at 412–13, 703 A.2d at 1137–38; *but see CLT Telecommunication Corp. v. Colonial Data Technologies Corp.*, No. 3:96CV2490, 1999 WL 200700 (D.Conn.1999) (lex loci delicti applies absent showing that result would be arbitrary or irrational).

29. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971).

30. *Id.* §§ 145, 6(2).

leged injury occurred principally or entirely in Connecticut. The parties' relationship was centered in Connecticut. The domiciles and places of business of the plaintiff and the defendants are in New York and Connecticut, respectively. Thus, one of the four factors enumerated in Section 145(2) points to the choice of New York law, two point to the choice of Connecticut law, and the fourth is neutral.

A number of the factors listed in Section 6(2) are irrelevant or inconclusive. The interstate system, for example, has no needs relevant here. Both states prohibit fraud. Nor is there any particular difficulty in ascertaining or applying the law of either state. A number of the remaining factors, however, do favor application of the law of one state or the other.

The conduct at issue here is allegedly fraudulent representations made by a Connecticut business in Connecticut. Connecticut's interest in regulating conduct within its borders is superior to any interest of New York in having its law applied to such activities, at least where, as here, the principal substantive difference in the laws seems to be the more generous remedies available to the New York plaintiff under the Connecticut statute. Moreover, the choice of Connecticut law would serve the interest in certainty, predictability and uniformity of result by tending to favor uniform application of the Connecticut statute to conduct within that state.

In the last analysis, the only Section 6(2) factor cutting in favor of New York law is the protection of justified expectations to the extent that it may be argued that the parties' agreement to a New York governing law clause in the promissory note suggests an expectation that New York law would apply to their relationship. But the argument ultimately is unpersuasive. The governing law clause has no bearing at all on the sale of the Bugatti. Its relevance to the 1997 loan transaction is limited by the fact that the parties selected New York law to govern only the note; there is no suggestion that they agreed that their entire relationship would be governed by New York law. Moreover, the expectations of the parties, at least in the absence of a definitive selection of New York law for all purposes, is but one weight in the scales. Given Connecticut's interest in regulating conduct within its borders, the relative insignificance of New York's interest in applying its law to the issues here, and the fact that the parties' relationship was centered in Bridgeport, Connecticut, this Court holds that Connecticut law governs the claims at issue on this motion.

### Conclusion

For the foregoing reasons, defendants' motion to dismiss the fourth and sixth causes of action is denied in all respects.

SO ORDERED.